Filed 4/3/13  In re W.V. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re W.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W.V.,<br><br>        Defendant and Appellant. | A134381<br><br>**ORDER MODIFYING NONPUBLISHED OPINION**<br><br> (Alameda County<br> Super. Ct. No. SJ11017865) |

**BY THE COURT:**[*]

        IT IS ORDERED that the opinion filed on March 11, 2013 is modified as follows and the petition for rehearing is DENIED:

        1.  On page 13, in part II.B., a new footnote number 7 is added after the first sentence of the final, partial paragraph:

> Although not raised by W.V. in his opening brief, the People volunteer that, if W.V. is found unsuitable for DEJ on remand, the juvenile court should set W.V.'s maximum time of confinement (Cal. Rules of Court, rule 5.795(b)) and declare the status of the offense as a misdemeanor or a felony (§ 702; Cal. Rules of Court, rule 5.795(a)).  In his reply brief, W.V. agrees.  We will accept the concession of the People and direct the juvenile court accordingly.

---

[*] Before Simons, Acting P.J., Needham, J., and Bruiniers, J.

1

2.  On page 17, in part III., a new sentence is added at the end of the paragraph:

If the juvenile court denies DEJ to W.V., it shall also set W.V.'s maximum time of confinement and declare the status of his offense as a misdemeanor or a felony.

The modification effects a change in the judgment only to the extent noted in modification No. 2.

Date_____          _____ Acting P.J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re W.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W.V.,<br><br>        Defendant and Appellant. | A134381<br><br> (Alameda County<br> Super. Ct. No. SJ11017865) |

Minor W.V. admitted committing a sexual battery (Pen. Code, § 243.4, subd. (a)) against his sister.  The juvenile court's dispositional order required him to submit to polygraph testing as part of his sex offender therapy.  W.V. contends that the polygraph condition is overbroad and violates his Fifth Amendment right against self-incrimination. He also contends that the he was not notified of his eligibility for deferred entry of judgment (DEJ).  We agree on the latter point, and remand the case to the juvenile court so that W.V. may be at least considered for DEJ.

###### I.        FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, a wardship petition under Welfare and Institutions Code section 602[1] was filed against W.V., alleging five felony counts, as follows:

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

(1) committing a lewd and lascivious act on a child under 14 (Pen. Code, § 288, subd. (a)); (2) two separate counts of oral copulation with a minor (Pen. Code, § 288a, subd. (b)(1)); and (3) two separate counts of penetration of a minor with a foreign object (Pen. Code, § 289, subd. (h)). W.V.'s sister (Jane Doe) told a doctor that W.V. had been, over the course of about three years, coming into her room at night and sexually assaulting her while she was sleeping. She said the sexual assaults began when she was 13 years old and W.V. was 14 years old. When interviewed by police, Doe said that W.V. had assaulted her 10–15 times over the course of two to three years. W.V. admitted the allegations and said that their father once found him on top of Doe. W.V. felt remorseful and stated that he needed help.

On the same day the petition was filed, the prosecutor also filed a "Determination of Eligibility—Deferred Entry of Judgment—Juvenile" (Judicial Council Forms, form JV-750),[2] which indicated that W.V. was eligible for DEJ. However, the prosecutor did not check the box on the form indicating that a "Citation and Written Notification for Deferred Entry of Judgment—Juvenile (form JV-751)" was attached.

W.V. was detained at juvenile hall. W.V.'s mother indicated that she would like W.V. to return home. She said that she and her husband would " 'make sure that the children won't do it again.' " The probation officer recommended that W.V. remain in custody, given that "[i]t does not appear there are effective tools in place at the home to prevent the present matter from reoccurring."

At the detention hearing, there was a stipulated disposition. The first count of the petition was orally amended to charge a felony sexual battery (Pen. Code, § 243.4, subd. (a)) as a lesser related offense. W.V. admitted the amended count and all other counts were dismissed. W.V. was declared "a person described by Section 602." The court indicated that the maximum term of confinement was four years.

Prior to disposition, W.V.'s counsel sought out-of-custody treatment on the grounds that W.V. had accepted responsibility and had been very successful academically

---

[2] Unless otherwise indicated, all further form references are to Judicial Council Forms.

and in school athletics. The probation officer recommended that W.V. be placed in a suitable family home or group home. He relied on the advice of a clinician from the Guidance Clinic, who said he was very uncomfortable with W.V. staying with a relative. The clinician said "the case had a lot of red flags" because "[W.V.] was able to molest his sister for three years without anyone finding out" and "father did not question why [W.V.] was there when he saw his son on top of his daughter." He believed that "the family [was] 'circling the wagons' to try to minimize the impact of [W.V.'s] behavior. . . . [¶] Initially [W.V.] also minimized his behavior but after intensively interviewing, confronting him and helping to clarify the importance of honesty . . . [W.V.] did begin to take on more responsibility for his behavior albeit only a little at a time." The clinician also reported that W.V. was assessed as "in the low-moderate range" for recidivism risk. He opined: "This is usually an acceptable risk level for out-patient treatment . . . . However, other factors in this case, i.e., duration of abuse, level of family denial, ongoing family dysfunction, emotional stability and proximity of the victim had to be assessed to determine if a higher level of care was needed."

At the conclusion of the dispositional hearing, held on November 29, 2011, the juvenile court adjudged W.V. a ward of the court and ordered placement in the control of probation.[3] Among other probation conditions, the juvenile court's written order required W.V. "not be in the presence of children under the age of 14 without responsible relative adult supervision, [and to have] no contact with the victim Jane Doe. [¶] . . . [¶] Parent(s) and minor are to cooperate with the Probation Officer in any program of guidance, counseling or therapy, specifically a comprehensive out of home sex offender treatment program, not use computer unless being supervised by responsible adult, not to use computer to obtain pornographic material, *submit to polygraph testing . . . .*" (Italics added & some capitalization omitted.) On the record, the juvenile court explained that "[W.V.] is required to submit to polygraph testing as necessary in connection with his

---

**3** Subsequently, W.V. was placed in a residential sex offender program at Teen Triumph in Stockton.

sexual offender treatment program." W.V.'s counsel objected to the requirement. In its dispositional order, the juvenile court did not declare a maximum time of confinement. This timely appeal followed.

## II. DISCUSSION

On appeal, W.V. challenges only the polygraph testing condition and the juvenile court's failure to consider deferred entry of judgment.

A. *Polygraph Testing*

W.V. concedes that the juvenile court had the authority to require him to submit to a polygraph examination as a condition of his treatment. (See *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 319 (*Brown*) [rejecting argument that polygraph condition is per se invalid and illegal]; *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058 [" 'it is well established that courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety' "]; § 730, subd. (b) ["[w]hen a ward . . . is placed under the supervision of the probation officer . . . , [t]he court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced"].)

Instead, W.V. argues that the polygraph testing requirement, absent an offer of immunity, "impermissibly requires that [he] choose between making incriminating statements or jeopardizing his conditional liberty by remaining silent." He is concerned "that any statements made by him during the polygraph examination will be used as evidence to further prosecute him for [other] crimes." (See Evid. Code, § 351.1, subd. (b).)

Constitutional challenges to probation conditions are reviewed de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) The Fifth Amendment provides, in pertinent part, that no person "shall be compelled *in any criminal case to be a witness against himself.*" (U.S. Const., 5th Amend., italics added.) The Fifth Amendment privilege against self-incrimination "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant [and] also 'privileges him not to answer

6

official questions put to him in any other proceeding . . . where the answers might incriminate him in future criminal proceedings.' [Citation.]" (*Minnesota v. Murphy* (1984) 465 U.S. 420, 426.) The privilege against self-incrimination "is properly invoked whenever the witness's answers 'would furnish a link in the chain of evidence needed to prosecute' the witness for a criminal offense. [Citations.]" (*People v. Cudjo* (1993) 6 Cal.4th 585, 617.)

The People suggest that W.V. forfeited his constitutional argument by only raising an unspecified objection in the juvenile court. We disagree. Constitutional challenges to probation conditions raising pure questions of law are not forfeited by failure to object in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 879, 889; *In re Shaun R., supra,* 188 Cal.App.4th at p. 1143.)

However, the People are correct in asserting that W.V.'s Fifth Amendment claim is not ripe. "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes. However, the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. . . . [¶] . . . 'The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170–171.)

In *People v. Miller* (1989) 208 Cal.App.3d 1311 (*Miller*), the defendant, who had pleaded guilty to committing a lewd and lascivious act on a minor, appealed after he was sentenced and required to submit to polygraph testing as a condition of probation. (*Id.* at

7

p. 1314.) He argued that the condition violated his privilege against self-incrimination. The *Miller* court rejected the argument, explaining: "Defendant misconstrues the nature of the privilege. The privilege against self-incrimination is not self-executing; it must be claimed. (*Minnesota v. Murphy*[*, supra,*] 465 U.S. [at p.] 427.) Although defendant has a duty to answer the polygraph examiner's questions truthfully, unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered. (*Ibid*.) The mere requirement of taking the test in itself is insufficient to constitute an infringement of the privilege." (*Miller,* at p. 1315, parallel citations omitted.) In response to an argument that the condition was overbroad, the *Miller* court stated: "This is patently incorrect. The polygraph condition was expressly requested by the probation officer and imposed by the court to monitor defendant's compliance with the condition prohibiting unsupervised contact with young females. Thus any polygraph examination administered to defendant necessarily will be limited to questions relevant to compliance with that condition." (*Id.* at p. 1315.)

Like the defendant's claim in *Miller,* W.V.'s self-incrimination argument is not ripe. W.V.'s reliance on *U.S. v. Saechao* (9th Cir. 2005) 418 F.3d 1073 (*Saechao*) and *U.S. v. Antelope* (9th Cir. 2005) 395 F.3d 1128, 1135 (*Antelope*) does not convince us otherwise.

In *Antelope, supra,* 395 F.3d 1128, the defendant pleaded guilty to possessing child pornography. One of the conditions of his grant of probation was that he participate in a sexual abuse treatment program, which in turn required him to complete a "sexual history autobiography assignment and 'full disclosure polygraph' verifying his 'full sexual history,' " including all past sexual criminal offenses. (*Id.* at p. 1131.) Subsequently, the defendant's probation was revoked and he was incarcerated, after he invoked the Fifth Amendment when informed that his answers to polygraph sexual history questions could be released to authorities. (*Id.* at pp. 1131–1132, 1139.) Antelope argued that the Fifth Amendment prohibited the government from forcing him

to admit prior wrongdoing unless his statements are protected by use and derivative use immunity.  (*Id*. at p. 1133.)

The Ninth Circuit concluded that the defendant's claim was ripe for review, observing:  "From Antelope's perspective, in whose shoes we stand when deciding this threshold issue of justiciability, he has already suffered the very serious and non-hypothetical injury of imprisonment after he invoked his Fifth Amendment right. . . . Indeed, it is difficult to imagine a more paradigmatic 'injury in fact' than actual incarceration." (*Antelope, supra,* 395 F.3d at p. 1133.)  The court went on to note:  "The Fifth Amendment privilege is only properly invoked in the face of 'a real and appreciable danger of self-incrimination.'  [Citation.]  'If the threat is remote, unlikely, or speculative, the privilege does not apply . . . .'  [Citation.] . . . Nor does its umbrella shelter statements whose ability to incriminate is 'highly unlikely.'  [Citations.] [¶] Instead, because the Fifth Amendment's self-incrimination clause was designed 'to effect [the] practical and beneficent purpose' of preventing inquisitorial interrogation, [citation], it may only be invoked when the threat of future criminal prosecution is reasonably particular and apparent. [Citations.] [¶] . . . [But] an individual 'need not incriminate himself in order to invoke the privilege,' [citation], but may simply refuse to make any statements that place him at risk.  [Citation]. . . . Thus, when 'questions put to [a] probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution,' he may properly invoke his right to remain silent. [Citation.] [¶] In this case, Antelope's risk of incrimination was 'real and appreciable.' " (*Id*. at pp. 1134–1135.)  The court concluded:  "The treatment condition placed Antelope at a crossroads—comply and incriminate himself or invoke his right against self-incrimination and be sent to prison." (*Id*. at p. 1135.)

In *Saechao*, the defendant was subject to a condition that required him to " 'promptly and truthfully answer all reasonable inquiries' " from his probation officer. (*Id.* at p. 1075.)  The probationer was later interviewed by his probation officer and admitted that he possessed a firearm.  The evidence was turned over to authorities and the probationer was charged with being a felon in possession of a firearm.  (*Id.* at pp. 1075–

9

1076.)  The district court granted the defendant's motion to suppress, concluding that his statements to the probation officer were compelled in violation of the Fifth Amendment. (*Id.* at p. 1076.)  The Ninth Circuit upheld the trial court's ruling, reasoning that the statements were compelled because the probation condition expressly required defendant to answer " '*all* reasonable inquiries' " under penalty of revocation, and did not allow him to invoke his privilege without jeopardizing his probation.  (*Id.* at pp. 1078, 1081.)

Unlike the probationers in either *Antelope* or *Saechao*, there is no evidence in the record that W.V. has, in fact, been asked any polygraph examination questions at all, much less any questions that call for answers that would or could incriminate W.V. in a pending or future criminal prosecution.

To the extent that W.V.'s polygraph answers might be used for a nontherapeutic purpose in the context of a probation revocation proceeding, the Fifth Amendment privilege is not necessarily implicated.  (See *Minnesota v. Murphy, supra,* 465 U.S. at p. 435, fn. 7 [privilege against self-incrimination not "available on the ground that answering such questions might . . . result in the termination of probation"]; *Brown, supra,* 101 Cal.App.4th at p. 320 ["if the questions put to the probationer are relevant to his probationary status and pose no realistic threat of incrimination in a separate criminal proceeding, the Fifth Amendment privilege would not be available"].)  W.V. has not been forced " 'to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.' "  (*Saechao, supra,* 418 F.3d at pp. 1078, 1081; *Antelope, supra,* 395 F.3d at p. 1035.)  In other words, W.V. has not faced a "real danger of self-incrimination."  (*Antelope, supra,* 395 F.3d at p. 1035.)

W.V. also argues that the polygraph requirement is overbroad because the juvenile court's written order does not limit the questions that may be asked.  In *Brown, supra,* 101 Cal.App.4th 313, the defendant pleaded guilty to stalking his ex-girlfriend while a restraining order was in effect.  The defendant was sentenced to probation, subject to several conditions, one of which was the successful completion of a stalking treatment program.  (*Id.* at p. 317.)  After the defendant denied stalking his ex-girlfriend upon beginning treatment, the trial court ordered him to submit to a polygraph examination (*id.*

10

at pp. 318–319), but "declined . . . to put any restrictions on the administration of the . . . examinations." (*Id.* at p. 319.)

On appeal, the Fourth District Court of Appeal held that "[t]he fact that [the defendant] has a duty to answer the polygraph examiner's question[s] truthfully does not mean his answers are compelled within the meaning of the Fifth Amendment. [Citations.]" (*Brown, supra,* 101 Cal.App.4th at p. 320.) The court noted: "Thus, unless Brown specially invokes the privilege, shows he faces a realistic threat of self-incrimination and nevertheless is made to answer the question or questions, no violation of his privilege against self-incrimination is suffered. [Citations.] Of course, if the state puts questions to a probationer that call for answers that would incriminate him in a pending or later criminal proceeding, *and expressly or by implication asserts that invocation of the privilege would lead to revocation of probation*, the answers would be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution. [Citations.]" (*Ibid.,* italics added.) But, if questions posed are relevant only to a defendant's "probationary status and pose no realistic threat of incrimination in a separate criminal proceeding, the Fifth Amendment privilege [is] not . . . available and the probationer [will] be required to answer those questions truthfully. [Citation.]" (*Ibid.*) However, the court went on to hold that the trial court abused its discretion in imposing a polygraph testing condition without restrictions regarding the questions that may be asked. (*Id.* at pp. 317, 321.) The trial court was directed to enter an order limiting polygraph questions to those relevant to the crime for which Brown was convicted and the completion of his court-mandated stalking therapy program. (*Id.* at pp. 317, 321, 322–323.)

Here, the juvenile court explained, at the dispositional hearing, that "[W.V.] is required to submit to polygraph testing as necessary in connection with his sexual offender treatment program." Thus, presumably the court intended to limit the questions that could be asked to those which would monitor W.V.'s compliance with the other probation conditions, including his treatment program. Since we otherwise remand this

11

case, we will direct the trial court to modify its written order to make this limitation explicit.

B.     *DEJ*

Next, W.V. complains that the juvenile court failed to exercise its discretion to grant or deny DEJ.

" 'The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000.  The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment.  Entry of judgment is deferred.  After the successful completion of a term of probation, on motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges.  The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed.  (§§ 791, subd. (a)(3),[4] 793, subd. (c).)' " (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976; *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1121–1122.)  The procedures for considering DEJ reflect a " 'strong preference for rehabilitation of first-time nonviolent juvenile

---

**4** Section 791, subdivision (a), provides, in relevant part:  "The prosecuting attorney's written notification to the minor shall also include all of the following: [¶] . . . [¶] (3) A clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits *each allegation contained in the petition* and waives time for the pronouncement of judgment, and that upon the successful completion of the terms of probation, as defined in Section 794, the positive recommendation of the probation department, and the motion of the prosecuting attorney, but no sooner [than] 12 months and no later than 36 months from the date of the minor's referral to the program, the court shall dismiss the charge or charges against the minor. [¶] (4) A clear statement that upon any failure of the minor to comply with the terms of probation, including the rules of any program the minor is directed to attend, or any circumstances specified in Section 793, the prosecuting attorney or the probation department, or the court on its own, may make a motion to the court for entry of judgment and the court shall render a finding that the minor is a ward of the court pursuant to Section 602 *for the offenses specified in the original petition* and shall schedule a dispositional hearing."  (Italics added.)

offenders' " and limit the court's power to deny DEJ such that denial of DEJ to an eligible minor who wants to participate is proper only when the juvenile court finds that " 'the minor would not benefit from education, treatment and rehabilitation.' [Citation.]" (*In re A.I.* (2009) 176 Cal.App.4th 1426, 1434.)

" 'Section 790 makes a minor eligible for DEJ if all the following circumstances exist: [¶] "(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707. [¶] (3) The minor has not previously been committed to the custody of the Youth Authority. [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code." (§ 790, subd. (a)(1)–(6).)' " (*In re Kenneth J., supra*, 158 Cal.App.4th at pp. 976–977, fn. omitted; see Cal. Rules of Court, rule 5.800(a).) Section 790, subdivision (b), provides, in relevant part: "The prosecuting attorney shall review his or her file to determine whether or not paragraphs (1) to (6), inclusive, of subdivision (a) apply. If the minor is found eligible for deferred entry of judgment, the prosecuting attorney shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney."

Rule 5.800(b)(1) of the California Rules of Court provides: "Before filing a petition alleging a felony offense, or as soon as possible after filing, the prosecuting attorney must review the child's file to determine if the requirements of [California Rules of Court, rule5.800](a) are met. If the prosecuting attorney's review reveals that the requirements of [California Rules of Court, rule 5.800](a) have been met, the prosecuting attorney must file Determination of Eligibility—Deferred Entry of Judgment—Juvenile (form JV-750) with the petition." "If a minor is found eligible for DEJ, form JV-751, entitled 'Citation and Written Notification for Deferred Entry of Judgment—Juvenile,' is used to notify the minor and his or her parent or guardian. There is a box to check on the

13

form JV-750 indicating that the form JV-751 is attached." (*In re C.W.* (2012) 208 Cal.App.4th 654, 659; accord, Cal. Rules of Court, rule 5.800(c).)

"The DEJ statutes 'empower the court, under specified conditions, and upon the minor's admission of the allegations of the petition, to place the minor on probation without adjudging him or her to be a ward of the court.' (*In re Mario C.* (2004) 124 Cal.App.4th 1303, 1308.) Under appropriate circumstances, the court may summarily grant DEJ to the minor. (. . . §§ 790, 791; Cal. Rules of Court, rule 5.800.) If the court does not summarily grant DEJ, it must conduct a hearing at which it must 'consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties.' (Rule 5.800(f).) It is the mandatory duty of the juvenile court to either grant DEJ summarily or examine the record, conduct a hearing, and determine whether the minor is suitable for DEJ, based upon whether the minor will derive benefit from 'education, treatment, and rehabilitation.' (. . . § 791, subd. (b)[5]; see *In re Joshua S.* (2011) 192 Cal.App.4th 670, 677 [(*Joshua S.*)].) While the court is not required to grant DEJ, it is required to 'follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made.' (*In re Luis B.*[*, supra,*] 142 Cal.App.4th [at p. 1123].)" (*In re D.L.* (2012) 206 Cal.App.4th 1240, 1243–1244, parallel citations & fn. omitted.) "The juvenile court is excused from its mandatory duty to hold a hearing if, *after receiving*

---

[5] Section 791, subdivision (b), provides: "If the minor consents and waives his or her right to a speedy jurisdictional hearing, the court may refer the case to the probation department or the court may summarily grant deferred entry of judgment if the minor admits the charges in the petition and waives time for the pronouncement of judgment. When directed by the court, the probation department shall make an investigation and take into consideration the defendant's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation. The probation department shall also determine which programs would accept the minor. The probation department shall report its findings and recommendations to the court. The court shall make the final determination regarding education, treatment, and rehabilitation of the minor." (Italics added.)

*notice of eligibility for DEJ*, the minor nonetheless rejects DEJ consideration by contesting the charges . . . " (*id.* at p. 1244, italics added), or "evinces no interest whatsoever in [DEJ]." (*In re Kenneth J., supra,* 158 Cal.App.4th at pp. 979–980 [after notice, "some measure of consent" is required]; see also *In re Usef S.* (2008) 160 Cal.App.4th 276, 283–286.)

Here, the prosecutor complied with California Rules of Court, rule 5.800(b) by filing form JV-750 with the section 602 petition. The form indicated that W.V. was eligible for DEJ. The problem is that no form JV-751 appears in the record, nor is there any evidence that the juvenile court served W.V. or his parents with such a form, as required by California Rules of Court, rule 5.800(c). Thus, there is no evidence that the prosecutor provided notice to W.V. or his parents of DEJ eligibility and procedures. Thereafter, the juvenile court and the parties did not mention DEJ.[6] In similar circumstances, several courts have held that remand is required. (*In re C.W., supra,* 208 Cal.App.4th at pp. 660–663 [where no evidence appeared in the record that appellant was ever advised of DEJ eligibility, "it cannot be said that [appellant] chose not to pursue DEJ, as there is no indication that she was aware of her eligibility for it"]; *In re Luis B., supra,* 142 Cal.App.4th at p. 1123.)

The People acknowledge this authority and concede that the lack of any evidence of notice of DEJ eligibility requires remand to the juvenile court. However, they urge us to remand with directions that W.V. have "the opportunity to withdraw his negotiated admission" and that he be considered for DEJ only if he thereafter admits all of the allegations of the original section 602 petition. The People contend that DEJ is not available when a minor, such as W.V., admits only some of the allegations of the original petition, pursuant to a negotiated resolution. The People recognize that *Joshua S., supra,* 192 Cal.App.4th 670, holds otherwise, but argue that *Joshua S.* was incorrectly decided.

---

[6] The probation officer's report, filed in advance of the detention hearing, erroneously indicated that W.V.'s offense was listed under section 707, subdivision (b), which would make him ineligible for DEJ. (§ 790, subd. (a)(2); Cal. Rules of Court, rule 5.800(a)(2).)

15

In *Joshua S. supra,* 192 Cal.App.4th 670, our colleagues in Division Two held that, although a juvenile court is not required to consider DEJ suitability for a minor who denies the allegations of the petition and insists upon a jurisdictional hearing, it is required to consider DEJ suitability when a minor does not request such a hearing and admits the allegations of an amended petition. (*Id.* at pp. 681–682.) A section 602 petition was filed, alleging that Joshua S. possessed cocaine base for sale and falsely represented his identity to a peace officer. He was determined to be eligible for DEJ. (*Id.* at p. 674.) Thereafter, the possession count was amended to allege that Joshua S. was an accessory to a felony. Joshua S. admitted the amended count and the second count was dismissed. (*Ibid.*) Another wardship petition was filed, alleging four felony counts— possession of marijuana for sale, two counts of transportation or sale of marijuana, and unlawful carrying of a loaded firearm. Joshua S. was again determined to be eligible for DEJ. He then admitted an amended count 1 (possession of cannabis) and the remaining counts were dismissed. The juvenile court committed Joshua S. to a juvenile rehabilitation facility, without considering DEJ. (*Id.* at pp. 674–675.)

On appeal, Joshua S. argued that the matter must be remanded because the juvenile court failed to exercise its mandatory discretion to grant or deny DEJ. (*Joshua S., supra,* 192 Cal.App.4th at p. 675.) The court reviewed the DEJ procedures outlined above and observed: " 'While the court retains discretion to deny DEJ to an eligible minor, the duty of the prosecuting attorney to assess the eligibility of the minor for DEJ and furnish notice with the petition is mandatory, as is the duty of the juvenile court to either summarily grant DEJ or examine the record, conduct a hearing, and make "the final determination regarding education, treatment, and rehabilitation . . . ." [Citations.] . . . ' [Citation.]" (*Id.* at pp. 677–678.)

Joshua S. contended that the prosecutor's burdens had been met, but that the juvenile court failed to make the DEJ determination required by sections 790 and 791. (*Joshua S., supra,* 192 Cal.App.4th at p. 678.) The court rejected the respondent's argument that the court properly did not consider DEJ because Joshua S. had not admitted all of the allegations of the petitions, but rather, had negotiated a plea to reduced

16

charges. (*Id.* at pp. 678–679.) The court reasoned: "Appellant did not initially admit the allegations of the petition, but neither did he insist on a jurisdictional hearing. [¶] . . . [¶] [A] minor is not required to forego the right to a suppression hearing in order to accept DEJ. No part of a jurisdictional hearing was undertaken in the present case. When the suppression motion was denied . . . , [Joshua S.] admitted a reduced charge. In the [other] case, [Joshua S.] apparently did not pursue the suppression motion but rather admitted an amended petition. . . . [Joshua S.] did not reject DEJ and then seek to take advantage of it after contesting the allegations against him. [¶] We are not persuaded by respondent's assertion that the DEJ procedures require the minor to admit the charge initially alleged in the petition rather than a reduced one, as long as the admission *precedes* a contested jurisdictional hearing. A minor is not entitled to DEJ where he or she does not ' "admit the allegations" of the section 602 petition . . . " 'in lieu of jurisdictional and dispositional hearings.' " ' [Citations.] . . . Here, however, no jurisdictional hearing was held." (*Id.* at pp. 679–680.)

The *Joshua S.* court also rejected the respondent's contention that Joshua S. should not be considered for DEJ after negotiating a plea agreement reducing his legal responsibility because to do so "would remove [a] minor's incentive to 'expedite the process by a full admission of responsibility.' " (*Joshua S., supra*, 192 Cal.App.4th at p. 681.) The court explained: "[T]he process in the present case *was expedited*: [Joshua S.] admitted the allegations of the (amended) petition right after the denial of his suppression motion . . . , with no attempt to litigate the petitions. Thus, DEJ could have been granted, if found appropriate, 'in lieu of jurisdictional and disposition hearings' (§ 791, subd. (a)(3)). And [Joshua S.] did admit responsibility for his offenses, albeit not full responsibility for the initially charged offenses. In requiring a minor to 'admit[] each allegation contained in the petition,' section 791, subdivision (a)(3), does not specify that the petition cannot be amended where, as here, the amendment does not follow and is not the consequence of the minor contesting one or more of the allegations of the initial petition. [Citation.] The circumstances of this case are consistent with the goal of expediting juvenile wardship proceedings and avoiding contested jurisdictional hearings.

17

Further, making DEJ unavailable to a minor who admits an amended petition without contesting the allegations of the initial petition would not serve the [stated statutory] goal of increasing rehabilitation for first-time nonviolent offenders . . . .  [Citations.]" (*Joshua S.,* at p. 681, italics added.)  Accordingly, the matter was remanded so that the juvenile court could determine whether to grant or deny DEJ.  (*Id.* at pp. 673, 682.)

We are not persuaded by the People's argument that the *Joshua S.* holding conflicts with the plain language of section 791, subdivisions (a)(3) and (a)(4).  We find no basis to distinguish it, and we decline to find that it was wrongly decided.  Similar to Joshua S., W.V. here admitted the allegations of the amended petition without requesting a contested jurisdiction hearing.  Likewise, W.V. did not reject DEJ and then seek to take advantage of it after contesting the allegations against him.  (*Joshua S., supra,* 192 Cal.App.4th at p. 680, distinguishing *In re Kenneth J., supra,* 158 Cal.App.4th 973 and *In re Usef S., supra,* 160 Cal.App.4th 276.)  The authority the People rely on is distinguishable.   (See, e.g., *In re T.J.* (2010) 185 Cal.App.4th 1504, 1512 [minor not entitled to DEJ suitability hearing because "[he] had not *admitted* any allegations, and he necessarily had not done so *in lieu* of the jurisdictional hearing that had just been conducted"]; *In re R.C.* (2010) 182 Cal.App.4th 1437, 1441–1443 [minor not entitled to DEJ suitability hearing because he admitted only a misdemeanor]; *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1329 [DEJ law does not violate equal protection by denying benefits to first-time juvenile misdemeanants]; *In re V.B.* (2006) 141 Cal.App.4th 899 [minor under 14 was not eligible for DEJ].)

We are more sympathetic to the contention that W.V. seeks to improve a bargain he struck in the trial court, relying on *Joshua S.*.  As the People correctly observe, the negotiated disposition provided for a significantly reduced maximum term of confinement.  The People also speculate that the disposition here was intended to provide for the possibility of "more intrusive" supervision than that available under DEJ supervised probation.  They emphasize the contractual principles governing a negotiated admission, and the general rule that " '[a] defendant may not retain the favorable aspects of his negotiated disposition and at the same time jettison its unfavorable aspects.' "

18

(*People v. Miller* (2012) 202 Cal.App.4th 1450, 1461.)  While all this may well be true, what the People ignore is the absence of anything in the record that would support a finding that waiver of DEJ was a condition of, or consideration for, the stipulated disposition.  There was certainly no explicit waiver.  Moreover, it is impossible to find any implicit waiver when W.V. was never advised of his eligibility for DEJ in the first instance.

### III.    DISPOSITION

The judgment is vacated.  The case is remanded to the juvenile court for further proceedings in compliance with section 790 et seq. and rule 5.800 of the California Rules of Court.  If the juvenile court grants DEJ to W.V., the judgment will remain vacated.  Any polygraph testing probation condition shall be consistent with this opinion.  If the juvenile court denies DEJ to W.V., it shall reinstate the judgment but modify the conditions of probation consistent with this opinion.


_____
Bruiniers, J.


We concur:


_____
Simons, Acting P. J.


_____
Needham, J.


19