Filed 10/2/13  P. v. Sanchez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055734 |
| v. | (Super.Ct.No. FWV1100904) |
| ERIK MARIO SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  Affirmed with directions.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Erik Mario Sanchez was convicted of a single count of committing a lewd and lascivious act on a child, in violation of Penal Code section 288,

subdivision (c)(1).  On appeal, he contends the trial court improperly denied his request to be represented by retained counsel of his choice in violation of his constitutional rights.  Defendant also argues that several of the probation conditions placed upon him are unconstitutionally vague or overbroad, are not related to the offense of which he was convicted, or are overly burdensome.  The People respond that defendant's request to substitute retained counsel was properly denied as untimely, and that the challenged probation conditions are valid, albeit with some modifications.  We agree that some of the probation conditions should be modified, but otherwise we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

In April 2011, defendant molested his 15-year-old stepdaughter.  On the day in question, the victim and defendant were at home alone.  Each of them did some chores at home, but the victim eventually went to her room and brought out some papers concerning her participation on the cheerleading squad at school.  The victim started showing the papers to defendant while they were in the living room, but they soon moved to the victim's bedroom.  During this discussion, defendant asked the victim if she wanted him to massage her legs.  She said no, but defendant asked again.  The victim still declined, but defendant got some lotion and some petroleum jelly, and started to massage her legs anyway.

Defendant began by massaging the victim's feet and lower legs as she sat on the side of her bed in her room.  Defendant sat cross-legged on the floor.  They talked about the victim's cheerleading activities, and payments that would be required for her

2

participation. Defendant moved his hands up higher on the victim's legs, toward her thigh area. The victim felt uncomfortable and unsure of what was happening.

The massaging activity had gone on for 10 to 15 minutes. Defendant raised himself onto his knees, and then turned the victim onto her stomach and started to rub the back of her legs. The victim was shocked and did not say anything. Defendant started by massaging the back of the victim's calves, and moved his hands upward to rub the back of her thighs.

Next, defendant removed the victim's shorts and underwear and began rubbing his hands on her buttocks. He separated her legs so he could get closer to the bed. The victim said nothing because she was scared, but she started to cry. Defendant pressured her anal opening with his thumbs about five times. The victim felt him touch her vagina once. Defendant carried on massaging the victim's buttocks for perhaps five to 10 minutes.

Eventually, defendant stopped what he was doing. He then asked if the victim wanted him to "do the top." The victim said "no," so defendant partially pulled up her shorts and underwear, and left the room. The victim dressed herself and sat on the corner of the bed, crying. Defendant came back into the room a short time later and tried to talk to the victim. Defendant was "kind of freaking out," but the victim did not want to talk to him. She kept saying, "no." She packed some clothes into a bag and went into the garage to get away from defendant.

Defendant telephoned his wife, the victim's mother, and told her what had happened. When the victim's mother came home, she asked defendant to leave.

3

Defendant was charged by information with one count of committing a lewd act on a 15-year-old minor, by someone at least 10 years older than the victim (Pen. Code, § 288, subd. (c)(1).)

At trial, defendant testified in his own behalf. The victim said no, twice, to his offers to give her a foot massage. He decided to do it anyway, however, because he wanted to do something nice for her. He started to massage her legs because she complained of razor bumps on her legs, and asked him what she could do for that. Defendant claimed he was showing the victim how to use lotion and Vaseline to relieve the razor bumps.

Defendant denied that he turned the victim onto her stomach. He claimed that she did so herself. She was concerned about not getting lotion and Vaseline on the bed, so defendant gave her a towel; she spread out the towel and lay down on her stomach. Defendant stated that he "d[id]n't know why" he removed the victim's shorts and underwear, but supposed that the victim would not want to get lotion and Vaseline on her clothes as well. Defendant asked the victim if she wanted him "to do her top, referring to the shoulders, but she . . . just shook her head no." When defendant saw the blank look on the victim's face, he "realized what happened"—i.e., he had "made her feel uncomfortable"—and left the room.

Defendant got his cell phone and called his wife and told her about the massaging activity. Defendant denied that he had any sexual attraction to the victim and denied being sexually aroused during the massage.

4

Before trial, defendant had moved to dismiss the information pursuant to Penal Code section 995. The trial court heard and denied the motion in June 2011. Defendant considered and rejected a settlement offer. Appointed defense counsel, a deputy public defender, spent some months in discovery. In November 2011, both sides announced ready for trial, although defendant was considering another plea deal offered by the prosecution.

On the day trial was scheduled to begin, November 14, 2011, defense counsel represented to the court that defendant requested a continuance to hire a private attorney. The court stated, "This is the day for trial and the request to continue is denied." Voir dire began that afternoon. A jury was empanelled on November 16, 2011, and the parties presented opening statements. The People presented their witnesses and rested their case. The court heard and denied defendant's motion for acquittal under Penal Code section 1118.1. Defendant concluded giving his evidence on the following day. The court instructed the jury and the jury began deliberations. Alternate juror No. 1 was ordered into an on-call status and excused. Deliberations began again on November 18, 2011. The jury returned a verdict finding defendant guilty as charged.

The defense presented a psychological evaluation of defendant at the sentencing proceedings. The court granted supervised probation for 36 months, setting forth a number of terms and conditions of probation.

Defendant now appeals, contending that the trial court erred in denying his request to obtain private counsel. Defendant also complains that a number of the terms and conditions of probation are unconstitutionally vague and overbroad.

5

ANALYSIS

I. The Trial Court Properly Denied Defendant's Request for a Continuance to Retain

Private Counsel

Defendant contends that the trial court erred in summarily denying his request for a continuance to obtain representation by retained counsel. He urges that he had a due process right and a Sixth Amendment right to appear and defend with retained counsel of his choice.

As defendant recognizes, however, the right to retain counsel of choice is not absolute. A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness [citation], and against the demands of its calendar [citation]." (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 152 [126 S.Ct. 2557, 165 L.Ed.2d 409].) A trial court may therefore "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." (*Id.* at p. 152.) "As to defendant's request for a continuance to seek private counsel, the court's decision to deny the request is reviewed as an abuse of discretion. (*People v. Blake* (1980) 105 Cal.App.3d 619, 624 [164 Cal.Rptr. 480].)" (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367.)

Here, defendant has failed to show any abuse of discretion. Defendant made his request on the day trial was scheduled to begin, just as jury selection was about to start. He presented no particular justification for his desire to change attorneys. The attorney himself was not present in court to confirm that he would accept the representation. Defendant indicated that the substitution would cause at least three weeks of delay for the

6

new attorney to prepare. Defendant's tentative and vague request, devoid of any actual reasons to justify the substitution of attorneys and the delay, made on the very day of trial, was properly denied as untimely. (See *People v. Courts* (1985) 37 Cal.3d 784, 790-791.)

## II. The Challenged Probation Conditions Are Either Proper, or May Be Modified and Upheld

Defendant challenges several of the conditions of his probation as either unreasonable, redundant, vague, or overbroad.

### A. Principles Relating to Probation Conditions

Trial courts have "broad discretion" in setting the terms and conditions of probation. (*People v. Lent* (1975) 15 Cal.3d 481, 487 (*Lent*).) Penal Code section 1203.1 permits the trial court to impose reasonable conditions that may be appropriate to reform and rehabilitate the probationer, consistent with the ends of justice. Under principles enunciated in *Lent* (the so-called *Lent* test), "We review conditions of probation for abuse of discretion. [Citations.] Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition

is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1126-1127.)

An appellate court has "the power to modify a probation condition to render the condition constitutional. [Citations.]" (*People v. Turner* (2007) 155 Cal.App.4th 1432, 1436 (*Turner*).)

We examine each of the challenged probation conditions under these principles and standards.

B. Condition 16: Alcoholic Beverages

Condition 16 of defendant's probation requires that he, "Neither possess nor consume any alcoholic beverages nor enter places where such beverages are the chief item of sale, and submit to tests at the discretion of the probation officer." Defendant contends that this condition is invalid because it is unrelated to the offense and because it is unconstitutionally overbroad.

We disagree. Condition 16 is reasonably related to the prevention of future criminality. As defendant acknowledges, he has a past conviction for driving under the influence of alcohol in 2005. He attended an alcohol treatment program as a result of that conviction and successfully completed his probation in that case. He also attended Alcoholics Anonymous meetings. Nevertheless, defendant continued to drink alcohol, usually drinking two or three beers on a weekend. He last drank alcohol about three days before his probation report interview. Alcohol use has a significant connection to impaired judgment; defendant displayed extremely poor judgment, at the least, in the

8

instant case, as well as poor impulse control.  The no-alcohol condition was reasonably related to preventing future criminality.  (See, e.g., *People v. Smith* (1983) 145 Cal.App.3d 1032, 1034-1035 [Drinking at any time, even for a drinker who can stop at will, "can lead to a temporary relaxation of judgment, discretion, and control."  The physical effects of alcohol are "not conducive to controlled behavior."].)

The People concede that the portion of condition 16 that requires defendant to avoid establishments where alcohol is the main item of sale should be modified to include a knowledge requirement.  (*People v. Patel* (2011) 196 Cal.App.4th 956.)  Condition 16 should be modified to state that defendant should not "enter places where *he knows, reasonably should know, or has been informed by the probation officer that* [alcoholic] beverages are the chief item of sale . . . ."  (Italics added to indicate modification.)

C.  Condition 17:  Counseling

Condition 17 requires defendant to "Participate in a counseling program as directed by the probation officer, submit monthly proof of attendance and/or successful completion to the probation officer as directed and be responsible for payment of all program fee(s)."

Defendant contends that the counseling program requirement is overbroad and redundant:  overbroad because it assertedly gives the probation officer too wide a discretion to order defendant to attend any type of counseling program, and redundant because condition 4 requires him to cooperate with the probation officer in a program of rehabilitation.  Condition 29 requires him to participate in AA/NA meetings, and condition 32 requires participation in a sex offender treatment program.

9

The authority granted to the probation officer should be read with the presumption that the probation officer must exercise only reasonable, not abusive, authority. (*Olguin, supra*, 45 Cal.4th 375, 383.) The addition of the context answers not only the overbreadth but also the redundancy problem. Defendant himself presented a psychological evaluation to the court to assist in sentencing. The psychologist's report indicated a number of unresolved issues in defendant's childhood and background, including witnessing physical violence in the home, as well as being a childhood victim of various kinds of abuse. Such issues may not be adequately or directly addressed in 12-step programs or sex offender treatment. Defense counsel at sentencing appeared to invite counseling to address these issues: "We would like to see him get into therapy as soon as possible as Dr. Graham-Howard had suggested, and additional therapy for underlying problems that occurred while he was young and up until today that have not been resolved." Reading the condition to apply to this "additional therapy" identified by defense counsel addresses both the overbreadth and the redundancy concerns. With this understanding, condition 17 is upheld.[1]

D. Conditions 21 and 35: Association with Minors

Condition 21 requires that defendant "Not associate with females under the age of 18 . . . unless in the presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer."

---

[1] Subject to modification of the payment requirement, as described in section II.G., *post.*

Condition 35 states: "Do not associate with minors or frequent places where minors congregate, including but not limited to schoolyards, parks, amusement parks, concerts, playgrounds, swimming pools, and arcades, unless in the company of a responsible adult over the age of 21 who is approved by the probation officer or court, knows of your offense(s) and is willing to monitor your behaviour [*sic*]."

Defendant contends these conditions are vague and overbroad because no knowledge requirement is stated. He argues that the conditions should be amended to require that he avoid association with young females or minors, whom he knows, or has reason to know are under age 18 or are minors. The People agree that the terms should be modified. (*Turner*, *supra*, 155 Cal.App.4th 1432, 1436 ["A person may reasonably not know whether he or she is associating with someone under the age of 18. Fair notice . . . is not possible unless the probation condition is modified to require that defendant must either know or reasonably should know that persons are under 18 before he is prohibited from associating with them."].)

Condition 21 should be modified to read: "Not associate with females *whom you know, or reasonably should know, or have been informed by the probation officer that are* under the age of 18 . . . unless in the presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer." (Italics added to indicate modification.)

Condition 35 should be modified to read: "Do not associate with *persons whom you know, or reasonably should know, or have been informed by the probation officer that are* minors or frequent places where *you know, or reasonably should know, or have*

11

*been informed by the probation officer that* minors congregate, including but not limited to schoolyards, parks, amusement parks, concerts, playgrounds, swimming pools, and arcades, unless in the company of a responsible adult over the age of 21 who is approved by the probation officer or court, knows of your offense(s) and is willing to monitor your behavior." (Italics added to indicate modification.)

E. Condition 33: Polygraph

Condition 33 states: "You shall submit to random polygraph testing by a Probation department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program and be responsible for all costs associated with examinations."

Defendant concedes that polygraph testing may be an appropriate condition of probation, where it is used to ensure compliance with other conditions of probation (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1314), but urges that polygraph testing without limits or restrictions on the kinds of questions which may be asked is overbroad and unreasonable (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321 (*Brown*).)

The People agree that the scope of the polygraph questions should be limited to questions relating to defendant's successful completion of the sex offender treatment program or as to defendant's conviction. Condition 33 should be modified to state: "You shall submit to random polygraph testing by a Probation department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program, *limited to questions relating to the successful completion of the sex offender*

*program and to the crime of which you were convicted . . . .*" (Italics added to indicate modification.)[2]

F. Condition 34: Sexually Explicit Matter

Condition 34 provides: "Do not own, use, or possess any form of sexually explicit movies, videos, material, or devices unless recommended by a therapist and approved by the probation officer. Do not frequent any establishment where such items are the primary items viewed [or] sold at such establishment, and do not utilize any sexually oriented telephone services."

Defendant contends this condition is vague because the term "sexually explicit," unlike "obscenity," has no recognized legal definition. We disagree. In *Turner*, *supra*, 155 Cal.App.4th 1432, the appellate court considered a probation condition that required the defendant not to possess "any sexually stimulating/oriented material deemed inappropriate by the probation officer and/or patronize any places where such material or entertainment is available." (*Id*. at p. 1435.) The reviewing court found the condition unconstitutionally vague, but only with respect to the subjective standard of the probation officer's possible assessment that a matter would be "inappropriate." The court modified and affirmed the condition to read: " 'Not possess any sexually stimulating/oriented material having been informed by the probation officer that such material is inappropriate and/or patronize any places where such material or entertainment in the style of said material are known to be available.' " (*Id*. at p. 1436.) The modifications to the

---

[2] See Section II.G., *post*.

13

probation condition imported requirements of notice (the probation officer must inform the defendant which materials are inappropriate) and knowledge (not patronize a place known to the defendant to have sexually stimulating/oriented material available). The court left intact—implicitly approving—the language that the defendant avoid "sexually stimulating/oriented material." (*Ibid*.)

Similarly, in *People v. Moses* (2011) 199 Cal.App.4th 374, the court modified and affirmed a probation condition which prohibited the probationer from owning or possessing "any form of sexually explicit movies, videos, material, or devices." The probationer asked the court to strike the term "devices" from the condition, but the court found the phrase, " 'sexually explicit . . . devices' is not so imprecise that defendant will be unable to determine whether he is in compliance with the terms of his probation." (*Id*. at p. 377.)

We do agree, however, that a knowledge requirement should be added to condition 34; it should be modified to read: "Do not own, use, or possess any form of sexually explicit movies, videos, material, or devices unless recommended by a therapist and approved by the probation officer. Do not frequent any establishment where *you know, you reasonably should know, or you have been informed by the probation officer that* such items are the primary items viewed [or] sold at such establishment, and do not utilize any *telephone services which you know, or you reasonably should know, or you have been informed by the probation officer that are* sexually oriented telephone services." (Italics added to indicate modification.) As so modified, the probation condition is upheld.

14

G. Conditions Requiring Payment of Implementation Costs

Defendant next contends that certain terms of his probation improperly included the condition that he pay the costs of implementing those terms.[3] The People agree that a requirement that a probationer be responsible to pay the costs associated with implementing probationary programs may not itself be made a condition of probation. While "a trial court may order a defendant to pay for reasonable costs of probation . . . such costs are collateral and their payment cannot be made a condition of probation. [Citations.]" (*Brown, supra*, 101 Cal.App.4th 313, 321.) The trial court should be directed to strike the payment requirement from the conditions and terms of probation, to determine whether defendant has the ability to pay for such costs, and, if so, to issue a separate order for the payment of such costs. (*Id*. at p. 322.)

---

[3] Condition 17 reads: "Participate in a counseling program as directed by the probation officer, submit monthly proof of attendance and/or successful completion to the probation officer as directed *and be responsible for payment of all program fee(s)*." (Italics added.)

Condition 32 reads: "Participate in and complete a Sex Offender treatment program with a therapist approved by the Probation Officer until you are successfully discharged from the program, *and be responsible for all program fees*." (Italics added.)

Condition 33 reads: "You shall submit to random polygraph testing by a Probation department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program *and be responsible for all costs associated with examinations*." (Italics added.)

Condition 45 reads: "Submit to continuous Global Positioning System (GPS) monitoring as directed by probation officer *and pay all associated equipment and/or monitoring fees* and abide by all rules and restrictions of the program." (Italics added.)

DISPOSITION

The trial court properly denied defendant's motion for a continuance to obtain private counsel. The motion, made on the day trial began, was untimely.

Some of defendant's probation conditions should be modified. We direct the trial court to modify the probation conditions as follows:

Condition 16: "Neither possess nor consume any alcoholic beverages nor enter places where [you know, reasonably should know, or have been informed by the probation officer that] such beverages are the chief item of sale, and submit to tests at the direction of the probation officer."

Condition 17: "Participate in a counseling program as directed by the probation officer, [and] submit monthly proof of attendance and/or successful completion to the probation officer as directed."

Condition 21: "Not associate with females [whom you know, or reasonably should know, or have been informed by the probation officer that are] under the age of 18, unless in the presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer."

Condition 32: "Participate in and complete a Sex Offender treatment program with a therapist approved by the Probation Officer until you are successfully discharged from the program."

Condition 33: "You shall submit to random polygraph testing by a Probation department approved polygraph examiner at the direction of the Probation Officer, as part

16

of the sex offender surveillance program, [limited to questions relating to the successful completion of the sex offender program and to the crime of which you were convicted]."

Condition 34: "Do not own, use, or possess any form of sexually explicit movies, videos, material, or devices unless recommended by a therapist and approved by the probation officer. Do not frequent any establishment where [you know, you reasonably should know, or you have been informed by the probation officer that] such items are the primary items viewed [or] sold at such establishment, and do not utilize any [telephone services which you know, or you reasonably should know, or you have been informed by the probation officer that are] sexually oriented telephone services."

Condition 35: "Do not associate with [persons whom you know, or reasonably should know, or have been informed by the probation officer that are] minors or frequent places where [you know, or reasonably should know, or have been informed by the probation officer that] minors congregate, including but not limited to schoolyards, parks, amusement parks, concerts, playgrounds, swimming pools, and arcades, unless in the company of a responsible adult over the age of 21 who is approved by the probation officer or court, knows of your offense(s) and is willing to monitor your behaviour [*sic*]."

Condition 45: "Submit to continuous Global Positioning System (GPS) monitoring as directed by probation officer and abide by all rules and restrictions of the program."

As to the payment requirements in conditions 17, 32, 33, and 45, we direct that those requirements be stricken; the trial court is further directed to conduct a hearing and make findings as to defendant's ability to pay for such collateral costs. If the court finds

17

that defendant has the ability to pay such costs, it is directed to make a separate order for the payment of such costs.

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MCKINSTER _____
                                                                                            J.

We concur:

HOLLENHORST _____
            Acting P. J.

MILLER _____
            J.

18