[No. D039525. Fourth Dist., Div. One. Aug. 19, 2002.]

WILLIAM MAURICE BROWN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

James M. V. Fitzpatrick; Law Offices of Thor O. Emblem and Tracy L. Emblem for Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Stephen E. Carr, Deputy District Attorney, for Real Party in Interest.

## OPINION

**McINTYRE, J.**—William Maurice Brown has petitioned this court for a writ of mandate directing the superior court to vacate its order requiring him to submit to periodic polygraph examinations at his own expense as a condition of probation. We issued an order to show cause and a temporary stay. We conclude Brown has not demonstrated that periodic polygraph testing is per se invalid in this case. However, we hold the trial court abused its discretion in (1) imposing a polygraph testing condition without restrictions regarding the questions that may be asked by the examiner, and (2) requiring Brown to pay for such testing as a condition of probation.

Accordingly, we issue a writ of mandate directing the trial court to vacate its order imposing periodic polygraph testing at Brown's expense and to enter an order imposing periodic polygraph testing limited to questions relevant to the crime for which Brown was convicted and the completion of his court-mandated stalking therapy program. Payment of the costs of such testing shall not be included as a condition of probation. Rather, before the court may order Brown to pay any or all of the reasonable costs of the polygraph testing, it must, pursuant to Penal Code section 1203.1b (all statutory references are to the Penal Code), make an inquiry and determination regarding Brown's ability to pay, and determine the amount to be paid.

### FACTUAL AND PROCEDURAL BACKGROUND

Brown pleaded guilty to stalking Michelle Hoadley, his former girlfriend and the mother of his son, while a domestic violence temporary restraining order was in effect. In February 2001, he was sentenced to three years' probation with a variety of conditions, including the successful completion of a stalking treatment program with James A. Reavis, Psy.D, and submission to regular drug testing. In April 2001, Brown attempted to fake a urine drug test by using a concealed device filled with water mixed with food coloring. The tester discovered the device however, and as a result, Brown's probation was revoked and he was ordered to serve up to 270 days in a work furlough program.

Brown was released from the work furlough program in September 2001 and returned to the stalking treatment program on September 28, 2001. At the therapy session on September 28, Reavis went over Brown's behavior leading to his stalking conviction as set forth in the police reports, including following Hoadley, repeatedly threatening her by phone and e-mail, destroying her belongings, and sending her a semen-stained bathrobe, all in contravention of a domestic violence restraining order. In pleading guilty to

stalking Hoadley, Brown stipulated to the facts contained in the police reports and preliminary hearing transcript. However, Brown denied he had engaged in the behavior, and told Reavis he did not belong in the program because he was "not a stalker." Reavis indicated that the evidence "vastly contradict[ed]" this statement.

Reavis then recommended that Brown's probation be modified to include a polygraph testing condition for purposes of treatment. Reavis noted that soon after probation was imposed, Brown violated it through attempted manipulation and falsification of a drug test, that he denied the major facts of the case, scored above the threshold for psychopathic personality, a disorder associated with social deviance, callousness, manipulation, criminal predation, and pathological lying. Also, five of six "stalking recidivism predictors" were present in Brown's case. Reavis reported that a polygraph testing condition would "facilitate Mr. Brown in his attempts at being forthright in treatment."

Brown's probation officer, Denise Roth, reviewed Reavis's report and interviewed Brown, who indicated he had "already complied" because he had previously submitted to psychological evaluations and tests in connection with a related proceeding in family court, and stated "it is a done deal . . . history . . . not necessary to talk about." Thereafter, Roth requested that Brown's probation be modified to include "polygraph condition 10(o)" listed on the standard form "Order Granting Probation." Condition 10(o) states "Undergo periodic polygraph examinations at defendant's expense, at the direction of the probation officer."

The People then moved to modify Brown's probation to include polygraph condition 10(o)—i.e., to require Brown to undergo periodic polygraph examinations at his expense, at the direction of the probation officer. They argued that one of the key components of Brown's probation was attending and successfully completing the stalking treatment program, and that he would not be able to complete the program if he continued to "deny and manipulate" and if he did not complete the program, it was likely he would engage in similar behavior in the future. The People maintained polygraph testing would aid in the successful completion of the stalking treatment program and was a tool the probation department could use "to encourage truthfulness and a full accounting of [Brown's] past behavior as it relates to the charges in this case and his conditions of probation."

Brown opposed the imposition of polygraph condition 10(o). His attorney argued that imposing such a condition would be illegal and violate the Fifth and Sixth Amendments to the United States Constitution, and was unnecessary because "he's being treated and he's doing very well."

The court decided to modify Brown's probation to impose polygraph condition 10(o), in order to further Brown's stalking treatment. The court indicated it had not imposed the condition originally, because it "was operating under the assumption that Mr. Brown could be successful in treatment and would be open and honest about some of his issues." However, the court found that Brown had not been honest in treatment or with the probation department, appeared to be in denial, and "doesn't want to face up to some of the issues that he needs to deal with in the stalking counseling." The court declined, however, to put any restrictions on the administration of the polygraph examinations.

## DISCUSSION

■ Pursuant to section 1203.1, trial courts have broad discretion to impose conditions of probation to foster rehabilitation and reformation of the defendant, to protect the public and the victim, and to ensure that justice is done. (§ 1203.1, subd. (j); *People v. Miller* (1989) 208 Cal.App.3d 1311, 1314 [256 Cal.Rptr. 587, 86 A.L.R.4th 703].) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], fn. omitted, quoting *People v. Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].)

■ Applying these rules to the instant case, we reject Brown's contention that a polygraph condition is per se invalid and illegal. (See *People v. Miller, supra,* 208 Cal.App.3d at p. 1314.) The record indicates that Brown was not successful in his stalking treatment program because he was in denial regarding the underlying facts of the offense, did not see himself as a stalker, and was deceptive and manipulative, and that periodic polygraph examinations would aid Brown in the successful completion of the program. In addition, five of six stalking recidivism factors were present in Brown, indicating a likelihood that he would engage in further stalking behavior if he was not successful in treatment. Thus, the imposition of periodic polygraph examinations in connection with Brown's stalking therapy program is reasonably related to the crime of which Brown was convicted and to possible future criminality. (*People v. Lent, supra,* 15 Cal.3d at pp. 486-487; *People v. Miller, supra,* 208 Cal.App.3d at p. 1314 [polygraph condition to monitor child molester's compliance with conditions of probation, including

that he not be alone with young females, is valid as reasonably related to the underlying crime and future criminality]; see also *Cassamassima v. State* (Fla.Dist.Ct.App. 1995) 657 So.2d 906, 909-911 [polygraph condition as part of treatment of sex offenders is valid and effective in dealing with issues of denial common in these offenders and is a deterrent to recidivism].)

In so ruling, we reject Brown's contention that imposing polygraph testing as a condition of probation violates his rights and privileges under the Fifth and Sixth Amendments to the United States Constitution. The fact that Brown has a duty to answer the polygraph examiner's question truthfully does not mean his answers are compelled within the meaning of the Fifth Amendment. (*People v. Miller, supra,* 208 Cal.App.3d at p. 1315; see also *Minnesota v. Murphy* (1984) 465 U.S. 420, 427, 429 [104 S.Ct. 1136, 1142-1143, 79 L.Ed.2d 409].) Brown has misconstrued the nature of the privilege against self-incrimination; it is not self-executing; rather, it must be claimed. (*Minnesota v. Murphy, supra,* 465 U.S. at pp. 427-428 [104 S.Ct. at pp. 1142-1143]; *People v. Miller, supra,* 208 Cal.App.3d at p. 1315.) Thus, unless Brown specially invokes the privilege, shows he faces a realistic threat of self-incrimination and nevertheless is made to answer the question or questions, no violation of his privilege against self-incrimination is suffered. (*People v. Miller, supra,* 208 Cal.App.3d at p. 1315; see also *Minnesota v. Murphy, supra,* 465 U.S. at p. 427 [104 S.Ct. at p. 1142].) Of course, if the state puts questions to a probationer that call for answers that would incriminate him in a pending or later criminal proceeding, and expressly or by implication asserts that invocation of the privilege would lead to revocation of probation, the answers would be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution. (*Minnesota v. Murphy, supra,* 465 U.S. at p. 435 [104 S.Ct. at p. 1146]; *New Jersey v. Portash* (1978) 440 U.S. 450, 458-459 [99 S.Ct. 1292, 1296-1297, 59 L.Ed.2d 501].) On the other hand, if the questions put to the probationer are relevant to his probationary status and pose no realistic threat of incrimination in a separate criminal proceeding, the Fifth Amendment privilege would not be available and the probationer would be required to answer those questions truthfully. (*Minnesota v. Murphy, supra,* 465 U.S. at p. 435, fn. 7 [104 S.Ct. at pp. 1146-1147].)

As for Brown's contention that an order compelling him to submit to periodic polygraph testing violates his right to counsel under the Sixth Amendment, it is without merit, since there is no right to counsel in a probation interview or therapy session. (See *Minnesota v. Murphy, supra,* 465 U.S. at p. 424, fn. 3 [104 S.Ct. at p. 1140], and cases cited therein.)

Brown also contends the court should not have ordered polygraph testing as a condition of probation because it is not a reliable investigative

tool. We disagree. Although polygraph tests are deemed unreliable in California courts for evidentiary purposes, this does not mean they do not have value for investigative and other collateral purposes. (See *People v. Miller, supra,* 208 Cal.App.3d at p. 1315, and cases cited therein; see also *Cassamassima v. State, supra,* 657 So.2d at p. 909 [polygraph testing is a valuable tool in dealing with the issue of denial—often present in sex offenders].)

■ Brown's contention that the court's order imposing polygraph condition 10(o) is overbroad is well taken, however. The record indicates that the court decided to impose a polygraph condition to further Brown's successful completion of the stalking therapy program. Yet the court declined to place any restrictions on the questions that could be asked by the examiner or otherwise tailor the order to comport with the court's purpose in imposing the polygraph condition. Polygraph condition 10(o) in the form order granting probation is also broadly worded, requiring the defendant to "[u]undergo periodic polygraph examinations at defendant's expense, at the direction of the probation officer." As set forth above, however, periodic polygraph examinations *in furtherance of Brown's stalking therapy program* is a valid condition of probation because it is reasonably related to the crime of which Brown was convicted and to possible future criminality. (§ 1203.1, subd. (j); *People v. Lent, supra,* 15 Cal.3d at pp. 486-487; *People v. Miller, supra,* 208 Cal.App.3d at p. 1314.) Thus, the order imposing a polygraph condition must limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which Brown was convicted.

■ Brown also objects that polygraph condition 10(o) imposed by the court mandates that the testing be at his own expense. We note that a trial court may order a defendant to pay for reasonable costs of probation; however, such costs are collateral and their payment cannot be made a condition of probation. (§ 1203.1b; *People v. Hart* (1998) 65 Cal.App.4th 902, 907 [76 Cal.Rptr.2d 837].) Moreover, before ordering a defendant to pay costs of probation, the court must make an inquiry and determination of the defendant's ability to pay and the amount of payment. (§ 1203.1b, subd. (a).) Here, however, the requirement that the defendant pay for periodic polygraph testing is an integral part of polygraph condition 10(o) which require the defendant to "[u]undergo periodic polygraph examinations at defendant's expense . . . ." As such, payment of the costs of the polygraph testing is not collateral, but a condition of probation. (See *People v. Bennett* (1987) 196 Cal.App.3d 1054, 1056 [242 Cal.Rptr. 380]; *People v. Wilson* (1982) 130 Cal.App.3d 264, 268-270 [181 Cal.Rptr. 658].) In addition, at the hearing in which the court decided to make polygraph testing a condition of Brown's probation, Brown's attorney requested that the probation department bear 50 percent of the costs, and the court responded "I don't deal with

all that, so no." Pursuant to section 1203.1b, however, before requiring Brown to pay all or a portion of the reasonable costs associated with periodic polygraph testing, the court must make an inquiry and determination regarding his ability to pay, and issue a separate order for the payment of such costs. (See *People v. Bennett, supra,* 196 Cal.App.3d at p. 1056; *People v. Wilson, supra,* 130 Cal.App.3d at p. 269; § 1203.1b, subd. (a).) This order can be enforced through a civil action—not through contempt proceedings, or the threat, express or implied, of revocation of probation. (§ 1203.1b, subd. (d); see *People v. Bennett, supra,* 196 Cal.App.3d at p. 1056; *People v. Wilson, supra,* 130 Cal.App.3d at p. 269.)

Finally, Brown complains that the condition mandating his participation and completion of the stalking therapy program requires him to be an unwilling participant in Reavis's wide-scale research project and that Reavis recommended polygraph testing as a condition of probation in order to further his own research. In the course of this writ proceeding, Reavis withdrew from treating Brown. However, we address this issue because the probation department indicated below that 90 to 95 percent of their stalking cases have a polygraph condition as part of a stalking treatment program, and it appears that Reavis is one of two providers, or may be the only provider, currently authorized by San Diego County to treat offenders convicted of stalking. This form provides, inter alia, that in the course of treatment "[d]ata, in the aggregate form, may be used for research purposes." The People provided a copy of this form, signed by Brown, as evidence that Brown had consented to being part of Reavis's research and to Reavis's use of data derived during Brown's treatment, including his polygraph results, for research purposes. ■ The difficulty is that if a defendant is required to complete a particular stalking treatment program as a condition of probation, and must sign a consent form agreeing to the use of data collected in the course of treatment for research purposes before such treatment can begin, then participation in the provider's research project, for all practical purposes, is mandated and becomes a condition of probation. Participation in Reavis's research may aid in the rehabilitation of offenders convicted of stalking in the aggregate, but does not foster the reformation and rehabilitation of a particular probationer, and thus, it is not a valid condition of probation. (See *People v. Miller, supra,* 208 Cal.App.3d at p. 1314.) Therefore, before a probationer can become part of a research project or data derived from his treatment can be used for research purposes, he would need to give his separate consent, and such consent cannot be mandated before treatment can begin or made a condition of treatment.

## DISPOSITION

Let a writ of mandate issue ordering the Superior Court of San Diego County to vacate its order imposing polygraph condition 10(o) and to enter

an order imposing periodic polygraph testing as condition of probation that limits the questions allowed to those relating to the successful completion of the court mandated stalking therapy program and the crime of which Brown was convicted. Payment of the costs of such testing shall not be included in this condition of probation. Before the court may order Brown to pay any or all of the reasonable costs of the polygraph testing, it must, pursuant to section 1203.1b, make an inquiry and determination as to Brown's ability to pay and determine the amount of payment.

Haller, Acting P. J., and McDonald, J., concurred.

Petitioner's petition for review by the Supreme Court was denied October 16, 2002.