Filed 6/13/14  P. v. Seminario CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES RANDALL SEMINARIO,<br><br>    Defendant and Appellant. | G049064<br><br>(Super. Ct. No. 13NF0659)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Roger B. Robbins, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

INTRODUCTION

Defendant James Randall Seminario pled guilty to possessing child pornography. As part of his probation, he was required to participate in a treatment program, including periodic polygraph examinations. Defendant challenges this probation condition as requiring the waiver of his constitutional right against self-incrimination, and as overbroad. We reject the challenges. Defendant's probation conditions specifically noted that the polygraph examination requirement did not constitute a waiver of his right against self-incrimination. Settled law holds required participation in polygraph examinations does not violate the privilege conferred by the Fifth Amendment to the United States Constitution. Polygraph examinations are a necessary part of the state's containment model for ensuring the public's safety from sex offenders. The examinations are related to the subject crime and to defendant's future criminality. We therefore affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant was charged with one count of possessing child pornography, in violation of Penal Code section 311.11, subdivision (a). (All further statutory references are to the Penal Code unless otherwise noted.) Defendant pled guilty pursuant to a plea agreement. The trial court placed defendant on five years' formal probation, subject to terms and conditions, including that defendant serve 365 days in county jail, less presentence custody credits. Defendant filed a timely notice of appeal.

DISCUSSION

Section 1203.067, subdivision (b), provides, in relevant part: "On or after July 1, 2012, the terms of probation for persons placed on formal probation for an offense

that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following: [¶] . . . [¶] (2) Persons placed on formal probation on or after July 1, 2012, shall successfully complete a sex offender management program, following the standards developed pursuant to Section 9003, as a condition of release from probation. The length of the period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court. [¶] (3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program."

Defendant's conviction required him to register under section 290 et seq., and he was placed on probation after July 1, 2012, making section 1203.067, subdivision (b) applicable. Probation condition No. 20 required defendant to "[e]nroll in and complete and pay all costs of an outpatient and/or residential treatment program as directed by program provider, including psychological and psycho physical testing, to include periodic polygraph examinations. This does not constitute a waiver of your right against self-incrimination."[1]

Defendant challenges section 1203.067, subdivision (b)(3) and probation condition No. 20 on the grounds they (1) impermissibly interfere with or compel the waiver of his constitutional right against self-incrimination, and (2) are unconstitutionally overbroad, both in general and as applied to defendant. The Attorney General argues

---

[1] Although defendant entered a guilty plea, he objected to "the term and condition of probation that includes the polygraph," preserving the issue for appeal. We reject the Attorney General's argument that defendant forfeited this argument.
Defendant's probation conditions are at odds with section 1203.067, subdivision (b)(3) because the statutory requirement that defendant waive his right against self-incrimination has been specifically excluded. The Attorney General did not appeal from the probation conditions, so the issue of the propriety of that part of the probation conditions is not before us on appeal.

defendant's constitutional argument regarding the right against self-incrimination is not yet ripe because there is no actual controversy involving defendant's waiver of his Fifth Amendment privilege.

Whether section 1203.067's requirement that a probationer waive his or her right against self-incrimination is constitutional is not before us on this appeal, as the trial court specifically exempted defendant from that part of the statute. "'[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.' [Citations.]" (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230.)[2]

Does the requirement that defendant complete a sex offender management program, and participate in polygraph examinations as part of that program, unconstitutionally force a waiver of defendant's right against self-incrimination? No. This question was resolved more than 20 years ago. "Defendant asserts the polygraph requirement violates his privilege against self-incrimination. Defendant misconstrues the nature of the privilege. The privilege against self-incrimination is not self-executing; it must be claimed. [Citation.] Although defendant has a duty to answer the polygraph examiner's questions truthfully, unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered. [Citation.] The mere requirement of taking the test in itself is insufficient to constitute an infringement of the privilege." (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1315; see *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 320 ["The fact that [the defendant] has a duty to answer the polygraph examiner's question truthfully does not mean his answers are compelled within the meaning of the

---

[2] We note that three published cases, all from the Sixth Appellate District, have reached differing conclusions on this issue. (*People v. Klatt* (2014) 225 Cal.App.4th 906; *People v. Friday* (2014) 225 Cal.App.4th 8; *People v. Garcia* (2014) 224 Cal.App.4th 1283.)

Fifth Amendment"].) In *Minnesota v. Murphy* (1984) 465 U.S. 420, 427, the United States Supreme Court held that the Fifth Amendment is not implicated when a probationer is required to participate in treatment and respond truthfully to any and all questions by his or her probation officer. We see no appreciable difference between the requirement that the defendant in *Minnesota v. Murphy* respond truthfully to his probation officer as a part of his treatment plan following a sexual offense, and the requirement here that defendant submit to polygraph examinations as part of his treatment following a sexual offense.

Is the requirement that defendant participate in polygraph examinations as part of the sex offender management program unconstitutional because it is overbroad? Again, this question is resolved by application of the well-established law of this state.

"A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted.)

In *People v. Miller*, *supra*, 208 Cal.App.3d at pages 1314-1315, the court held that subjecting a probationer, convicted of committing a sex offense, to polygraph examination was reasonably related both to the crime of which the defendant was convicted and to future criminality, and therefore was not an invalid probation condition. The court explained: "Defendant argues the requirement of submission to polygraph testing is unreasonable. Pursuant to Penal Code section 1203.1, the sentencing court has broad discretion to prescribe reasonable probation conditions to foster rehabilitation and

5

to protect the public so justice may be done.  [Citations.] . . . [¶] Applying these rules to the instant case, we conclude the polygraph condition is valid.  Defendant pled guilty to a sex crime committed upon a seven-year-old female.  One condition of probation is that he not be alone with young females.  As indicated at sentencing, compliance with that condition is difficult to enforce.  The polygraph condition helps to monitor compliance and is therefore reasonably related to the defendant's criminal offense.  Because this condition is aimed at deterring and discovering criminal conduct most likely to occur during unsupervised contact with young females, the condition is reasonably related to future criminality.  [Citations.]  [¶] Defendant argues the condition is insufficient to monitor his compliance with the other conditions of probation because polygraph examinations are unreliable.  Polygraph tests are deemed unreliable for evidentiary purposes.  [Citations.]  However, this is an evidentiary rule and does not preclude the use of such tests for investigative purposes.  [Citation.]  In fact, polygraphs are commonly used and have value as an investigative tool.  [Citations.]  Here, the polygraph condition was imposed not to gather possible evidence but solely to serve as a catalyst for further investigation." (*Ibid.*; see *Brown v. Superior Court*, *supra*, 101 Cal.App.4th at p. 319 [because periodic polygraph examinations would aid in ensuring the defendant completed his stalking treatment program, they were reasonably related to the crime of which he was convicted and to his future criminality, and therefore were not per se invalid or illegal].)

The Sex Offender Treatment Program Certification Requirements (rev. Oct. 2013), published by the California Sex Offender Management Board pursuant to section 9003, make clear the purpose of polygraph testing within the sex offender management program.  (Cal. Sex Offender Management Bd., Sex Offender Treatment Program Certification Requirements (rev. Oct. 2013) available at <http://www.cce.csus.edu/portal/admin/handouts/CASOMB%20Program%

6

2010-29-13%20complete.pdf> [as of June 13, 2014].) [3] Those requirements state: "Based in part upon the considered recommendations of the California Sex Offender Management Board, California has adopted, by law, the well-established and widely-recognized Containment Model, a comprehensive strategy to manage offenders in a systematic and collaborative manner. The central goal of the Containment Model is community and victim safety, a goal which is supported by adopting a victim-centered perspective on all aspects of sex offender management. The model recognizes that multiple entities play important roles in the community management of sex offenders and stresses the importance of open ongoing collaboration between these key players. Four elements form the core of the Containment Model: [¶] . . . [¶] . . . Polygraph examinations are used to enhance the assessment process and to help monitor the sex offender's deviant fantasies and external behaviors, including access to potential victims." (Cal. Sex Offender Management Bd., Sex Offender Treatment Program Certification Requirements, *supra*, at p. 6.)

Even more so than in *People v. Miller* or *Brown v. Superior Court*, these considerations establish the need for polygraph examinations as part of the sex offender treatment program to decrease recidivism and protect the public, particularly the most vulnerable members of the public. As explained in *People v. Garcia*, *supra*, 224 Cal.App.4th at page 1298: "The Legislature's enactment of section 1203.067 recognized that a grant of probation to a sex offender is a very risky proposition that is appropriate

_____

[3] On our own motion, and after notice to the parties, pursuant to Evidence Code sections 452, subdivision (c), 455, subdivision (a), and 459, subdivision (a), we take judicial notice of the California Sex Offender Management Board, Sex Offender Treatment Program Certification Requirements, *supra*, available at <http://www.cce.csus.edu/portal/admin/handouts/CASOMB%20Program%2010-29-13%20complete.pdf> (as of June 13, 2014).

only where those risks can be managed. One of the risks is that the sex offender's full history of sex offenses may not be known when he or she is granted probation. The Legislature could reasonably conclude that a sex offender who has committed additional unreported sex offenses generally poses a significantly greater risk to the public if he or she is not incarcerated. Similarly, the state has a compelling interest in discovering whether the sex offender is committing additional offenses while on probation." (See *People v. Klatt*, *supra*, 225 Cal.App.4th at p. 927 (conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.) ["In enacting section 1203.067, subdivision (b), the Legislature recognized that it is appropriate to grant probation to a sex offender only if the risks can be managed, and that participation in a sex offender management program will help manage those risks"].)[4]

---

[4] The overriding purpose of the sex offender management program, as explained in the Sex Offender Treatment Program Certification Requirements, is the safety and well-being of the public. "For the safety and well-being of California's citizens, especially those most vulnerable to sexual assault, it is essential to manage known sex offenders living in the state's communities in ways that most effectively reduce the likelihood that they will commit another offense, whether such reoffending occurs while they are under the formal supervision of the criminal justice system or takes place after that period of supervision comes to an end. [¶] Specialized sex offender treatment programs which consistently deliver state-of-the-art rehabilitative services play a major role in these community protection efforts. [¶] There is general agreement that correctional programming, properly designed and delivered, is effective in reducing criminal recidivism. And there is strong evidence that sex offender treatment, when provided correctly, significantly reduces the risk of future sexual victimizations. Current research strongly supports the view that treatment and management efforts driven by the basic principles of correctional programming, and particularly by the 'Risk Principle, Need Principle and Responsivity Principle,' are the best practices in the general corrections field as well as in the field of specialized sex offender treatment." (Cal. Sex Offender Management Bd., Sex Offender Treatment Program Certification Requirements, *supra*, at p. 1, available at <http://www.cce.csus.edu/portal/admin/ handouts/CASOMB%20Program%2010-29-13%20complete.pdf> [as of June 13, 2014].)

Defendant also argues probation condition No. 20 is overbroad because there is no limit or restriction on the types of questions that may be asked of him. In *Brown v. Superior Court*, *supra*, 101 Cal.App.4th at page 321, the court held that "the order imposing a polygraph condition must limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which Brown was convicted." Probation condition No. 20 does not include such a limitation. The California Sex Offender Management Board, Post-Conviction Sex Offender Polygraph Standards (June 2011) available at <http.//www.casomb.org/docs/ Certification_Standards/Polygraph_Standards.pdf> (as of June 13, 2014), however, carefully explain the types of questions that are permitted in polygraph examinations which are conducted under section 1203.067.[5] The Post-Conviction Sex Offender Polygraph Standards define relevance of questioning in five different types of examinations that may be conducted: "instant offense exams, prior-allegation exams, sexual history disclosure exams, maintenance exams, and sex offense monitoring exams." (Cal. Sex Offender Management Bd., Post-Conviction Sex Offender Polygraph Standards, *supra*, at pp. 10-23.) Given the purpose of polygraph examinations as a part of the sex offender management program, we disagree with defendant that the questions that may be asked in polygraph examinations "flagrantly ignore the holding of the court in *Brown*, and clearly call for the potential disclosure of information that would tend to incriminate the probationer."

---

[5] On our own motion, and after notice to the parties, pursuant to Evidence Code sections 452, subdivision (c), 455, subdivision (a), and 459, subdivision (a), we take judicial notice of the California Sex Offender Management Board, Post-Conviction Sex Offender Polygraph Standards, which are promulgated pursuant to the authority of section 9003, subdivision (d), and are available at <http.//www.casomb.org/docs/ Certification_Standards/Polygraph_Standards.pdf> (as of June 13, 2014).

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.