Filed 8/25/15  P. v. Garth CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061025 |
| v. | (Super.Ct.No. SWF1303075) |
| OLIVER WENDELL GARTH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed as modified.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne McGinnis, Allison V. Hawley and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Oliver Wendell Garth of making a criminal threat (Pen. Code, § 422), and the trial court sentenced him to 36 months of

1

probation. The court also issued a protective order prohibiting contact with the victim and his family, and ordered defendant to pay the costs of drug testing, probation report preparation, and probation supervision. On appeal, defendant argues that his conviction should be reversed because the trial court erroneously admitted a statement he made to a social worker shortly after the threat. He also argues that the trial court erred in issuing the protective order and requiring him to pay the probation-related costs. With the exception of the modifications discussed below, we affirm the judgment and sentencing order.

FACTUAL BACKGROUND

The prosecution presented the following evidence at trial: Defendant is the victim's next-door neighbor in Temecula. On September 28, 2013, defendant was playing loud music inside his residence. The music was so loud that the victim had trouble hearing his own television. Around noon, the victim walked over to defendant's house and asked him to turn the music down. Defendant turned the music off, but a few hours later he turned it back on. The music became louder throughout the afternoon. By the time the victim and his daughter sat down for dinner, it was so loud that they could not talk to each other during the meal. The victim again walked over to defendant's house and asked him to turn the music down. Defendant, who appeared to be drunk, turned it down slightly.

A short while later, the police arrived at defendant's house. Defendant turned off the music. When the officer left, defendant turned the music back on and walked out of his garage. He walked towards the victim's house and yelled, " 'You coward. You

2

called the cops on me. . . . [¶] . . . [¶] . . . If you call the cops again, I'm going to come into your house and I'm going to kill you and your family.' "

The victim, who had not called the police, was outside his house talking with his neighbors as defendant was yelling. He verified with the neighbors that he had heard defendant correctly, and immediately called the police. The victim's daughter, who was inside the house at the time, heard defendant yelling and locked herself inside her closet. The victim called his wife, who picked their daughter up from the house.

Later that day, a social worker from the Riverside Department of Public Social Services (DPSS) arrived at defendant's house to ensure that his minor children would be cared for if he were taken into custody. Defendant told the social worker that "if his children were . . . placed in protective custody he would hurt the person that got him arrested."

DISCUSSION

1.    *Defendant's statement to the social worker*

Defendant contends the trial court erred in admitting the statement he made to the social worker because the statement was irrelevant, highly inflammatory, and prejudicial. We disagree.

a.    *Procedural background*

Before trial, the prosecutor filed a motion to admit defendant's statement to the social worker, arguing that the statement was relevant and admissible under Evidence Code section 1101, subdivision (b), as circumstantial evidence of intent. The motion stated that defendant had told the social worker that he "would 'hurt the officer who

3

arrested him,' " because this was how the statement was worded in the police report. After reading the motion, the trial court informed counsel that it was inclined to admit the statement because, "when a person, on the same day, only a few hours apart, acting under what would appear to be a similar frustrated, angry frame of mind, threatens to kill one group of people if they notify the police, something that they're perfectly free to do and have every right to do, and then a short time later makes an indirect threat to a [social worker] for performing [her] duties, . . . the second event sheds light on the defendant's intent that he, in fact, intended that his first statement be understood as a threat."

Defense counsel argued that "whatever limited probative value" the statement carried with respect to intent would be outweighed by the danger that the jury would think defendant "was abusing or neglecting his children." He argued that to involve DPSS in the case in any way would be inflammatory.

The court ruled that the statement to the social worker was relevant, probative, and admissible under Evidence Code section 1101, subdivision (b) to prove defendant's intent when making the statement to the victim. It found the circumstances of both statements similar "because the defendant is making a threat to inflict some sort of physical harm or physical ramification on a person if they carry out some lawful duty or exercise some right." Regarding prejudice, the court explained, "I just don't think that the calling out of [DPSS] because the defendant is about to get arrested and there is no other adult to care for the children is a mark on his good character. [¶] It's not like they're removing the kids because he is using drugs." The court noted that DPSS's involvement could even arouse a juror's sympathy because "depending on how the jury views [the alleged threat],

4

it's not only getting him arrested but it's getting his kids removed from the home." To reduce any risk of prejudice, the court limited the social worker's testimony about her involvement in the case to ensuring that there was another adult available to care for the children, and it excluded evidence that "the home is in shambles" or that "they're removing the kids because [defendant] is an unfit parent."

The day after the court's admissibility ruling, the prosecutor informed the court that the social worker had informed him that defendant's statement was different from what was written in the police report. Defendant had not told her that he would " 'hurt *the officer* that arrested him,' " rather, he said he "would hurt *the person that got him arrested*." (Italics added.) The court responded that the correction "only makes [the statement] more relevant to the case."

> b. *The statement was admissible under Evidence Code section 1101, subdivision (b)*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. (*People v. Viera* (2005) 35 Cal.4th 264, 292.) Under this standard, the court's admissibility ruling " 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.)

Evidence Code section 1101 prohibits the admission of evidence of a defendant's prior uncharged misconduct to show he committed the current offense, but it allows such evidence to show, among other things, the defendant's identity or plan, or the defendant's

5

state of mind, such as motive, knowledge, or intent. (Evid. Code, § 1101, subds. (a) & (b).) Admissibility for these limited purposes depends on the similarity between the charged and uncharged conduct, and each purpose requires a different degree of similarity. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*).)

The use of the evidence to prove intent requires the "least degree of similarity." (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Specifically, the uncharged conduct is admissible if it is "sufficiently similar [to the charged conduct] to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid.*, quoting *People v. Robbins* (1988) 45 Cal.3d 867, 879 (*Robbins*) superseded by statute on another ground as stated in *People v. Jennings* (1991) 53 Cal.3d 334, 364.)

Here, within the span of a few hours, defendant made two related threats about the victim. First, he yelled at the victim that he would "kill [him] and [his] family" if the victim called the police again. Later that day he told a social worker that he would "hurt" the person who "got him arrested." It is clear from the record that this second statement referred to the victim, as defendant believed the victim was responsible for his arrest. After the police came to his house about the music, defendant yelled to the victim, " 'You coward. You called the cops on me.' "

The similarity between these two statements is obvious. They both express anger at the victim for calling the police and a desire to retaliate. Because defendant's second statement threatens the victim's physical safety, the statement is relevant and probative to the issue of whether defendant intended the victim to understand his earlier statement to be an actual threat, as opposed to, e.g., an expression of frustration. Thus, we conclude

6

that the trial court did not abuse its discretion in ruling that defendant's statement to the social worker was admissible for tending to show intent.

Defendant argues that his statement to the social worker is not admissible because he lacked the criminal intent required under Penal Code section 422 when he made the statement. Evidence Code section 1101, subdivision (b) does not require that the intent behind the charged conduct be identical to the intent required for the charged conduct. As our Supreme Court has explained, the focus of the inquiry is not the specific intent of the defendant during the commission of the misconduct, but rather the similarity of the misconduct. (*Robbins*, *supra*, 45 Cal.3d 867 at pp. 879-880; *Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The analysis focuses on similarity because " 'the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other *innocent mental state*, and tends to establish . . . the presence of the normal, i.e., *criminal, intent* accompanying such an act.' " (*Robbins*, at pp. 879-880, italics added.) The inference to be drawn from similar misconduct is not that defendant harbored a particular criminal intent, but rather that he harbored a criminal intent as opposed to an innocent mental state. In other words, "sufficiently similar" conduct can negate a defendant's argument that there was an innocent explanation for the charged conduct. This is precisely why defendant's statement to the social worker is admissible here. It supports an inference that defendant meant to threaten the victim and tends to negate defendant's argument that his words were mere hyperbole.

7

Next, defendant argues that, in any event, his statement to the social worker was not "sufficiently similar" to the charged conduct to be admissible. Defendant points to the different environments in which he made the two statements. Specifically, he highlights that he made the first statement "outside on his driveway" and to the victim, whereas he made the second statement in custody and to a social worker. This attempt to pinpoint differences between the two statements only reinforces their similarities. Both statements were threatening, were about the victim, and were made after defendant was asked to do something he did not want to do. Any technical differences between these statements are insignificant to the admissibility analysis.

We also reject defendant's contention that his statement to the social worker is irrelevant to intent because he made it *after* he made the statement to the victim. The timing of the statement is not dispositive. Uncharged conduct that is similar to and occurs after the charged conduct is admissible to show intent. (See *People v. Griffin* (1967) 66 Cal.2d 459, 464-465.) In *Griffin*, evidence of a subsequent uncharged rape was admissible to show intent during the defendant's murder trial because of the "similarities between the crimes." (*Ibid.*)

That defendant can distinguish this case from the facts of *People v. McCray* (1997) 58 Cal.App.4th 159, where the uncharged conduct admitted to show intent occurred before the alleged criminal threat and involved physical violence, does not affect our conclusion. *McCray* is simply one example of the many instances in which uncharged conduct is relevant to intent. Additionally, defendant's argument that the statement is not probative to his intent because it was made to the social worker as

8

opposed to the victim is unavailing. Defendant's statement to the social worker threatening violence against the victim tends to show that he was in a threatening state of mind. In other words, the fact that he made two threats against the victim in a span of hours tends to show that he was not merely expressing frustration when he threatened violence against the victim from his driveway, but rather he wanted those words to be understood as a threat.

Next, defendant argues that even if his statement to the social worker was relevant to his intent, it was inadmissible under Evidence Code section 352 because it was unduly prejudicial. Defendant asserts that the statement (1) suggested that he is "the *type of person* to threaten violence when angered" and (2) "associated [him] with . . . an entity that evokes images of child abuse and neglect." We conclude that any risk of prejudice to defendant was outweighed by the statement's probative value.

Under Evidence Code section 352, " 'the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice.' " (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337.) As discussed, *ante*, defendant's statement to the social worker was probative as to whether he intended his statement to the victim to be understood as a threat. In comparison to this probative value, the risk of prejudice was low.

First, pursuant to the trial court's direction, the social worker explained that she was only involved in the case because she needed to ensure that defendant's minor children would be cared for if he were taken into custody on the criminal threat charge.

9

In other words, the social worker's involvement was a direct result of defendant having threatened the victim, and had nothing to do with "child abuse [or] neglect."

Second, the risk that the jury would infer from defendant's statement to the social worker that he had a propensity to threaten violence when angered was low. Rather, the statement more strongly supported an inference that defendant was angry with the victim, specifically. Because the second statement makes it more likely that defendant was angry with the victim, it also makes it more likely that defendant had intended to threaten the victim when he yelled at him earlier in the afternoon. Perhaps if the statement had been a threat to the social worker or to anyone else besides the victim, there would be a risk that the jury would infer defendant had a propensity to threaten others when angry. However, because the second statement was also about the victim and made during a time when defendant was still angry over law enforcement's involvement in the music dispute, the statement conveys intent more than it does propensity. Moreover, any risk of prejudice was tempered by the trial court's use of CALCRIM No. 375 to instruct the jury to consider "the similarity or lack of similarity" between defendant's two statements and to consider the statement to the social worker only "for the limited purpose of deciding whether or not: [¶] . . . the defendant acted with . . . intent."

We conclude that the trial court did not abuse its discretion in ruling that the statement's probative value substantially outweighed its prejudicial effect.

2.     *Probation-related costs*

Following the probation officer's recommendation, the trial court required defendant to pay the costs of probation report preparation and probation supervision. In

10

his opening brief, defendant argued that he was entitled to, but did not receive, an ability-to-pay hearing.  Defendant now concedes that under the recent case of *People v. Trujillo* (2015) 60 Cal.4th 850, published after he filed his opening brief, he forfeited his right to an ability-to-pay hearing by failing to raise the issue with the trial court.

The only remaining issue with the probation-related costs is their current status as probation conditions.  The People correctly argue, and defendant concedes, that the sentencing order should be modified to clarify that the probation-related fees are an order, not a condition of probation.

"[A] trial court may order a defendant to pay for reasonable costs of probation; however, such costs are collateral and their payment cannot be made a condition of probation." (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321, citing Pen. Code, § 1203.1b.)  The appropriate remedy when collateral costs are imposed as a condition of probation is to modify the order granting probation to clarify that payment of those fees is a separate order.  (See, e.g., *People v. Kim* (2011) 193 Cal.App.4th 836, 847-848.)  Therefore, the sentencing minute order dated April 18, 2014, should be modified to clarify that the costs of the probation report and probation supervision are separate orders and not probation conditions.

3.    *Drug testing costs*

Defendant argues that the court lacked the authority to require him to pay for the costs of court ordered drug testing.  He asserts that Penal Code section 1203.1ab and Health and Safety Code section 11551, two statutes that govern imposition of and payment for controlled substance drug testing, do not authorize the court to require him

to pay for such tests. Defendant's arguments are misplaced because the court did not order drug testing for controlled substances, it only ordered testing for alcohol.

At the sentencing hearing, the court told defendant that he has "a serious alcohol issue." The court noted that defendant had previously been convicted of two DUIs and that he likely would not have committed his current offense "had [he] not been under the influence of alcohol." As a result of defendant's alcohol abuse, the court stated, "I'm going to make an order that you may not consume any alcohol whatsoever. There is going to be an order in here that's going to demand that you immediately test for the presence of alcohol upon the request of a probation officer." The written probation conditions, which the court adopted from the probation report, prohibit defendant from "consum[ing] alcoholic beverages" and require him to "[s]ubmit to chemical tests . . . and reasonable physical tests requested by Probation Officer or law enforcement officer for the detection of alcohol." The condition immediately following the alcohol testing condition requires defendant to "[p]ay the actual costs of court ordered drug testing." Because the only testing the court ordered in this case is for the detection of alcohol, we interpret the phrase "drug testing" to refer to testing for alcohol only. Thus, we reject defendant's argument that the requirement to pay for testing costs is invalid under Penal Code section 1203.1ab and Health and Safety Code section 11551. Instead, we conclude that the requirement is valid under Penal Code section 1203.1.

Penal Code section 1203.1 allows a court to impose reasonable conditions of probation "as it may determine are fitting and proper." (§ 1203.1, subd. (j).) A court has "broad discretion to impose conditions of probation to . . . protect the public and the

12

victim." (*People v. Jungers* (2005) 127 Cal.App.4th 698, 702.) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486.) Additionally, "a trial court may order a defendant to pay for reasonable costs of probation." (*Brown v. Superior Court*, *supra*, 101 Cal.App.4th at p. 321.)

Here, alcohol testing is a reasonable condition of probation because defendant has been convicted of alcohol-related crimes in the past and was under the influence of alcohol when he made the criminal threat in this case. Because this testing is a reasonable condition of defendant's probation, the court acted within its discretion in requiring defendant to pay for it. However, as with the probation-related costs, because the court imposed this requirement as a probation condition, the sentencing minute order dated April 18, 2014, should be modified to reflect that payment of alcohol testing costs are separate orders and not conditions of probation.

    4.    *The protective order*

At the sentencing hearing, the trial court imposed a probation condition prohibiting defendant from annoying, striking, threatening, etc., the victim and his family. The court also issued a criminal protective order prohibiting defendant from having any contact with the victim and his family. The court stated that it was imposing the protective order "as a probation condition" and explained that "there[ are] really two conditions": (1) the prohibition on annoying, striking, etc., and (2) the prohibition on

13

contact. The court explained that the reason it was issuing the protective order as a probation condition in addition to the annoy/strike condition was because the standard form for the protective order contains "very specific language, and list[s] all of the [victim's] family members." The standard form also contains options for the type of protective order. The trial court checked the box stating that the order is a probation condition order issued under Penal Code section 136.2.

Defendant argues that the court lacked the authority to issue the protective order under Penal Code section 136.2. Specifically, he argues that section 136.2 only authorizes prejudgment orders and specific postjudgment orders that do not apply here, such as postjudgment orders in domestic violence or sexual abuse cases. Defendant is incorrect.

Penal Code section 136.2 authorizes protection orders "limited to the pendency of the criminal action in which they are issued *or to probation conditions*." (*People v. Stone* (2004) 123 Cal.App.4th 153, 159, italics added; accord *People v. Selga* (2008) 162 Cal.App.4th 113, 118-119 (*Selga*).) Because the trial court issued the protective order as a probation condition, to expire at the end of defendant's probation, the order was authorized under section 136.2.

Relying on *Selga*, *supra*, 162 Cal.App.4th 113, defendant argues that the protective order is invalid because its violation "may be punished as a felony, a misdemeanor, or contempt of court." In *Selga*, the appellate court refused to treat a criminal protective order invalidly issued under Penal Code sections 136.2 and 1203.097 (which protects the victims of domestic violence) as a probation condition imposed under

14

Penal Code, section 1203.1. (*Selga*, at p. 120.) The basis for the appellate court's refusal was that violation of the order was "punishable as a separate offense," whereas violations of Penal Code section 1203.1 probation conditions "are established by statute, i.e., that probation may be revoked." (*Selga*, at p. 120.) Because the protective order was not issued under Penal Code section 1203.1 but rather under Penal Code section 136.2, *Selga* does not apply.

## DISPOSITION

The judgment is affirmed. The trial court is directed to modify the minute order dated April 18, 2014, to reflect the costs of the presentence probation report, probation supervision, and drug testing are separate orders and not conditions of probation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

15