Filed 3/23/16  P. v. Gonzalez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063719 |
| v. | (Super.Ct.No. FWV1405172) |
| GERARDO ALONSO GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gerard S. Brown, Judge.  Affirmed as modified.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

Pursuant to a plea agreement, defendant and appellant Gerardo Alonso Gonzalez pled guilty to assault with force likely to produce great bodily injury. (Pen. Code,[1] § 245, subd. (a)(4).) In accordance with the plea agreement, the trial court placed defendant on probation for a period of three years, under specified probation conditions. On appeal, defendant contends the court abused its discretion in ordering the condition requiring him to submit to random polygraph testing. We conclude that the probation condition should be modified. Otherwise, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Jane Doe was doing some Christmas shopping at the mall with her sister when she felt a slap on her buttocks. She described it as a "pretty hard" slap. She was shocked and immediately turned around to see who did it. As soon as she turned, she saw defendant looking at her. He started walking, so Doe and her sister followed him. Doe observed him slap or grab another girl's buttocks. They continued to follow him, and Doe's sister called security. Defendant was walking at a fast pace and went into a restaurant. Security officers detained him in the restaurant until the police arrived.

On December 29, 2014, an information was filed alleging that defendant committed a lewd act on a child (§ 288, subd. (c)(1), count 1) and sexual battery (§ 243.4, subd. (e)(1), count 2). On March 5, 2015, the information was orally amended to add a

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

[2] The factual background is taken from the preliminary hearing transcript.

third count of assault with force likely to produce great bodily injury.  (§ 245, subd. (a)(4), count 3.)  The court reviewed the terms of the plea agreement, which stated that defendant would receive felony probation, serve 364 days in county jail, be subject to "sex offender terms" and "alcohol terms," that he was to stay away from Ontario Mills shopping mall, and that he would not be required to register as a sex offender under section 290.  The court orally reminded defendant that he would have "standard sex offender terms," and that he would not have to register as a sex offender.  The parties stipulated that there was a factual basis for the plea, and, pursuant to the plea agreement, defendant pled no contest to count 3.  The court referred the matter to the probation department for a presentence report and ordered defendant back on April 1, 2015, for sentencing.

At the outset of the sentencing hearing on April 1, 2015, defense counsel agreed that defendant had "stipulate[d] to certain offender terms," but then objected to the probation term requiring him to submit to random polygraph testing.  Defense counsel asserted that after defendant entered his plea, she "came across some case law" stating that "any waiver of self-incrimination based on polygraph testing is unconstitutional."  The prosecutor said that the polygraph requirement was "part of the sex offender terms, and that's what [their] bargain was, that [defendant] doesn't have to register, but he's monitored like a sex offender."  The prosecutor said it was a standard probation condition in those types of cases, and the court allowed the condition to stand.  The court then dismissed counts 1 and 2, on motion by the People.

3

ANALYSIS

The Condition Requiring Defendant to Submit to Polygraph Testing Does Not Violate

His Right Against Self-Incrimination

The trial court imposed condition No. 32 (the polygraph condition), which required that defendant "submit to random polygraph testing by a Probation department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program and be responsible for all costs associated with examinations." Defendant contends that the condition is unconstitutional, in that it violates his Fifth Amendment right against self-incrimination and is overbroad. We agree that the condition is overbroad and should be modified.

A. *Defendant's Challenge is Not Barred*

At the outset, the People argue that defendant's challenge is barred because he failed to obtain a certificate of probable cause. Citing *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon*), the People contend that, because the record indicates the polygraph condition was an express element of defendant's plea agreement, his challenge to it is an attack on the validity of the plea. We find the record unclear on the matter.

Section 1237.5 provides in relevant part: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.

[¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." "It has long been established that issues going to the validity of a plea require compliance with section 1237.5." (*Panizzon*, *supra*, 13 Cal.4th at p. 76.)

In *Panizzon*, *supra*, 13 Cal.4th 68, the defendant pled no contest to various felony counts "pursuant to a plea bargain that specifically provided for the imposition of certain prison time." (*Id.* at p. 72.) After the court sentenced him in accordance with the plea bargain, defendant sought to appeal the sentence. (*Id.* at pp. 72-73.) The Supreme Court concluded that "by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, defendant [was], in substance, attacking the validity of the plea." (*Id.* at p. 78.) For that reason, the court held that the certificate requirement of section 1237.5 applied. (*Ibid.*)

Here, the People claim that defendant agreed to the polygraph condition as an element of his plea agreement; thus, since the trial court simply imposed the conditions he had agreed to, his challenge to the polygraph condition is an attack on the validity of the plea. However, unlike *Panizzon*, the condition defendant is contesting was apparently not "an integral part of the plea." (*Panizzon*, *supra*, 13 Cal.4th at p. 73.) The record indicates that defendant entered the plea agreement and merely agreed to "sex offender terms." The plea agreement did not list any specific terms. After taking his plea, the court then referred the matter to the probation department for a presentence report. Thus, defendant was not given a list of the *specific* probation conditions until after he entered

5

his plea.  We note that once defendant was given the list of probation conditions, defense counsel objected to the polygraph condition at the sentencing hearing.  Because it does not appear that defendant agreed to the polygraph condition specifically as part of the plea, we cannot say that his challenge to that condition is a challenge to the validity of the plea.  Therefore, we will reach the merits of defendant's claim, even though he did not obtain a certificate of probable cause under section 1237.5.

B.  *The Polygraph Condition Does Not Violate Defendant's Fifth Amendment Right Against Self-Incrimination*

Defendant challenges the polygraph condition and initially asserts that the court abused its discretion by imposing the condition simply "on the basis that it was a 'standard' condition for all sex offenders."  He also argues that the polygraph condition is overbroad.  We conclude that the court did not abuse its discretion in imposing the polygraph condition, but agree that the condition should be modified.

Section 1203.1 provides that in granting probation, the court may impose any and all conditions that it determines are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, . . ." (§ 1203.1, subd. (j).)  The trial court has "broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  "The trial court's discretion, although broad, nevertheless is not

6

without limits:  a condition of probation must serve a purpose specified in the statute.  In addition, we have interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.'  [Citation.]" (*Id*. at p. 1121.)  Accordingly, a probation condition "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'  [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted.)  A probation condition is valid under the Fifth Amendment unless there is a reasonable basis for concluding an impermissible penalty has been attached to the exercise of the privilege.  (*Minnesota v. Murphy* (1984) 465 U.S. 420, 436-437.) *Minnesota v. Murphy* sets forth the rule that the Fifth Amendment privilege is not lost when a person is granted probation.  Specifically, a state cannot "constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." (*Id.* at p. 438.)

We reject defendant's contention that imposing polygraph testing as a condition of probation violates his rights and privileges under the Fifth Amendment.  The fact that defendant "has a duty to answer the polygraph examiner's question truthfully does not mean his answers are compelled within the meaning of the Fifth Amendment. [Citations.]  [He] has misconstrued the nature of the privilege against self-incrimination; it is not self-executing; rather, it must be claimed.  [Citations.]  Thus, unless [defendant]

7

specially invokes the privilege, shows he faces a realistic threat of self-incrimination and nevertheless is made to answer the question or questions, no violation of his privilege against self-incrimination is suffered.  [Citations.]"  (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 320 (*Brown*).)

Defendant's contention that the polygraph condition is overbroad, however, is well taken.  In *Brown*, *supra*, 101 Cal.App.4th 313, the court imposed a polygraph condition to further the defendant's successful completion of a stalking therapy program.  (*Id*. at p. 321.)  The court found that the condition was broadly worded, in that it required the defendant to "'[u]ndergo periodic polygraph examinations at [the] defendant's expense, at the direction of the probation officer.'"  (*Ibid*.)  The court held that the condition imposing polygraph testing was required to "limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which [the defendant] was convicted."  (*Ibid*.)

Here, the text of the polygraph condition is similar to the one in *Brown*, except that defendant has been ordered to complete a sex offender surveillance program, rather than a stalking therapy program.  Like the condition in *Brown,* the polygraph condition does not limit the types of questions that can be asked during the examination and, thus, is overbroad.  It should be rewritten to limit the questions allowed to those relating to the successful completion of the court-mandated sex offender surveillance program and the crime of which defendant was convicted.  Additionally, the requirement that defendant pay the costs of polygraph testing cannot be included in the probation condition and

8

should therefore be stricken.  (*Brown*, *supra*, 101 Cal.App.4th at p. 321.)  As the *Brown* court noted, before requiring a defendant to pay all or a portion of the reasonable costs of polygraph testing, "the court must make an inquiry and determination regarding his ability to pay, and issue a separate order for the payment of such costs."  (*Id*. at p. 322; see § 1203.1b.)  "This order can be enforced through a civil action—not through contempt proceedings, or the threat, express or implied, of revocation of probation." (*Brown*, at p. 322.)

   We take note of the People's argument that the polygraph condition is not unconstitutional, as well as their lengthy discussion of the Sex Offender Punishment, Control, and Containment Act of 2006 (§ 290.03) and the sex offender management program (§§ 290.09 & 1203.067).  The People claim that defendant was ordered to participate in the sex offender management program pursuant to section 1203.067, which requires the "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program." (§ 1203.067, subd. (b)(3).)  However, the record does not reflect that the trial court ordered defendant's polygraph testing under section 1203.067.  In fact, section 1203.067 does not apply to defendant.  Rather, it applies to persons placed on probation "for an offense that requires registration pursuant to Sections 290 to 290.023."  (§ 1203.067, subd. (b).)  Defendant was convicted of assault, pursuant to section 245, subdivision (a)(4), which does not require sex offender registration (§ 290, subd. (c)).

Moreover, the court specifically noted that defendant did not have to register as a sex offender.

In his reply brief, defendant then responds as if he was subject to the requirements of section 1203.067. He contends that he "has been put in the position of completely waiving his privilege against self-incrimination on pain of revocation of his probation and imprisonment if he refuses to comply." Again, section 1203.067 does not apply to defendant.

Finally, the People note that the issue of whether a probation condition requiring a defendant to submit to polygraph examinations violates his Fifth Amendment rights is currently pending before the California Supreme Court. However, the three cases cited by the People—*People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288, *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755, and *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197—concern the constitutionality of requiring a registered sex offender to waive the privilege against self-incrimination under section 1203.067, subdivision (b)(3). Defendant similarly notes that those cases, along with *People v. Rebulloza* (2015) 234 Cal.App.4th 1065, review granted June 10, 2015, S225503, have been granted review, and he suggests that this court could "postpone any decision in this appeal" until the Supreme Court decides those cases. Again, none of those cases are relevant to the instant appeal, since the court here did not impose the polygraph condition pursuant to section 1203.067.

Thus, condition No. 32 is modified to read as follows:  "You shall submit to random polygraph testing by a Probation Department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program. The questions shall be limited to those relating to the successful completion of the sex offender surveillance program and the crime of which you were convicted."

DISPOSITION

The judgment is modified, as follows:

Probation condition No. 32 is modified to read:  "You shall submit to random polygraph testing by a Probation Department approved polygraph examiner at the direction of the Probation Officer, as part of the sex offender surveillance program.  The questions shall be limited to those relating to the successful completion of the sex offender surveillance program and the crime of which you were convicted."

As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

McKINSTER
J.

MILLER
J.

11