Filed 10/10/25  P. v. Hefner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086348 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF2201980) |
| ASHLEY MARIE HEFNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Frederick Paul Dickerson III, Judge.  Affirmed in part, reversed in part and remanded with directions.

Mytili G. Bala, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ashley Marie Hefner of elder abuse likely to cause great bodily injury (Pen. Code, § 368, subd. (b)(2)),[1] aggravated assault (§ 245, subd. (a)(4)), and destroying a cell phone to prevent the use of the device to call for help or report a crime (§ 591.5). Thereafter, the trial court sentenced Hefner to two years of formal probation subject to various conditions.

On appeal from the judgment of conviction, Hefner asserts reversal is required because the jury was not properly instructed on the elements of section 591.5. Hefner also challenges probation condition 10, which directs her to "[p]articipate and complete at [her] expense any counseling, rehabilitation/treatment program deemed appropriate by [her] probation officer." She asserts this condition violates the separation of powers doctrine by delegating judicial authority to the probation officer and unlawfully requires her to bear a cost of probation. As we shall explain, we agree with Hefner that reversal of the conviction for violation of section 591.5 is required, and that remand is appropriate for the trial court to eliminate or clarify probation condition 10.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution Case*

Hefner shares two children with the son of Jody, the victim of the underlying crimes. Hefner also has another older child from a prior relationship. The three children, who were 10 years old and younger at the time of the crimes, attended an elementary school near Jody's house. Hefner and the children stayed with Jody on weekdays during the school year, and occasionally on weekends. Jody was 67 at the time of the incident and Hefner was 28.

On a weeknight in December 2022, Hefner and the three children arrived at Jody's house around 9:00 p.m., which was abnormal because the children were usually in bed by 8:00 or 8:30 p.m. Jody also thought that Hefner's demeanor seemed odd when she arrived. Hefner said she had urinated herself and needed to shower. While Hefner showered, Jody got the children ready for bed and they sat on the couch and read stories.

Jody testified that on a normal night, Hefner would set up air mattresses and bedding for the kids. At the time, Jody was recovering from a double mastectomy and was undergoing chemotherapy for breast cancer. Jody also previously had both knees replaced and sometimes needed assistance with walking. Although she could do most activities, she would sometimes lose her balance, so Hefner would help her around the house.

After about 20 to 25 minutes, Jody went to check on Hefner to see if she could help her set up the kids' beds. She found Hefner in the extra bedroom on a futon, wrapped in the children's bedding. Jody repeatedly tried to wake Hefner without success. She left and came back a few minutes later, and shook Hefner to wake her. Jody was frustrated that Hefner was not helping get the kids to bed on a school night.

3

Hefner finally woke up and was agitated.  She closed the bedroom door on Jody while Jody tried to push the door open.  Jody heard what "sounded like slamming the wall, maybe things being thrown" coming from inside the room.  Jody told Hefner she was going to call the police, hoping that would calm Hefner.  Hefner continued to rage and, fearing for her own safety and that of the children, Jody called 911 on her cell phone.  The 911 recording was played for the jury.

During the call, Jody told the 911 operator she needed help.  She explained Hefner was being "verbally violent" and breaking things.  Towards the end of the call, Hefner is heard in the background yelling at Jody.  The 911 call was cut off when Hefner grabbed Jody's phone, broke it in half, and threw it.  Hefner also called Jody a "bitch" and a "cunt," and said Jody was "ruining her life."  Hefner was next to Jody as she was speaking to the 911 operator.

The children were crying, and Jody was scared.  Hefner told the children to get dressed because they were leaving.  The children sat in chairs in the dining room.  Hefner then head-butted Jody and slapped her with the kids looking on.  Jody testified that Hefner "put her hands around [her] throat" and was choking and pushing her against the dining room table.  During the altercation, the children were pleading with Hefner to stop.  Hefner threatened to kill Jody and said that since Jody had called 911, "she was going to make sure they had a reason to come out."

During Hefner's rage, she strangled Jody multiple times and punched her with closed fists while Jody was on the ground.  Hefner's oldest child testified at trial she heard glass breaking and saw Hefner's hands on Jody.  As Hefner attacked Jody, she asked the child to call the police and the child ran to a neighbor's house for help.  The neighbor called 911.

4

The entire altercation lasted 15 to 20 minutes. Jody sustained a black eye, suffered a cut on her left eye, had marks around her neck and collarbone, and bruising on her chest and back. Photographs of the ransacked house and Jody's injuries were shown to the jury.

Sheriff's deputy Michael Zepeda responded to the scene. When he arrived, Hefner and Jody were sitting on the kitchen floor about three feet from each other. Jody could not stand on her own and was visibly injured. Hefner's oldest child told Zepeda she saw her mother push Jody into a table and choke her. Zepeda also testified that Hefner told him she pushed Jody and Jody fell on a table. During his rebuttal testimony, Zepeda stated that Hefner admitted throwing Jody's phone while Jody was speaking with the 911 operator and slapping Jody.

Heffner was arrested and charged shortly after.

B. *Defense Case*

Hefner took the stand in her own defense and presented a different account of the events. She told the jury she had a medical procedure around 1:30 p.m. under general anesthesia, which her doctors said would make her groggy after. Hefner's boyfriend picked her up after the procedure and took her and the children to Jody's house around 9:00 or 9:30 p.m. Hefner felt dizzy and nauseous and had to take a shower because she had urinated herself. She also said she felt unusually tired and not in control of her body. After showering, she wrapped herself in a towel and laid down to rest.

Hefner woke to Jody yelling at her for not setting up the kids' beds and pulling her by the hair into the hallway. Hefner said she tried to find her keys to leave, but Jody got in her face and started calling her names. Jody grabbed her by the shirt and grabbed her shoulder, saying she could not take the children. Hefner responded by pushing Jody, who fell back and hit her

5

head on a barstool.  The two then sat down, and Hefner asked Jody if she was okay.

C. *Conviction and Sentencing*

Hefner was charged with child endangerment as to her oldest child (§ 273a, subd. (b); count 1), elder abuse likely to cause great bodily injury (§ 368, subd. (b)(1); count 2), assault likely to cause great bodily injury (§ 245, subd. (a)(4); count 3), misdemeanor destruction of a cellular phone to prevent a 911 call (§ 591.5; count 4), and dissuading a crime victim from reporting (§ 136.1, subd. (b)(1); count 5).

All of the charges proceeded to a jury trial in March 2024.  The jury could not reach a verdict on count 1, and the court declared a mistrial as to that charge.  The jury acquitted Hefner of count 5, dissuading a crime victim from reporting.  The jury convicted Hefner as charged on counts 2, 3, and 4.

At the subsequent sentencing hearing, the court granted the prosecution's request to dismiss count 1.  The court sentenced Hefner to formal probation for two years, subject to various conditions.  As a condition of probation, Hefner was required to serve 300 days in local custody, with 76 days of actual custody and conduct credits.  Probation condition 10, at issue on appeal, required Hefner to "[p]articipate and complete at your expense any counseling, rehabilitation/treatment program deemed appropriate by [a] probation officer; and authorize the release of information relative to progress."  The court found Hefner unable to pay fines and fees pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

Hefner timely appealed from the judgment of conviction.

DISCUSSION

I

Hefner first asserts that reversal is required because the trial court failed to properly instruct the jury on the elements of section 591.5. The Attorney General responds that the trial court erred by failing to instruct on the element of intent, but the error was harmless beyond a reasonable doubt because "the evidence overwhelmingly established that [Hefner] removed, obstructed, or disconnected Jody['s] cell phone so she could not obtain assistance."

A

*Legal Standards*

A claim of instructional error is reviewed de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) A trial court has the duty to fully and fairly instruct the jury on applicable law. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) Even absent a request, a court must instruct the jury on general principles of law necessary for the jury's understanding of the case. (*People v. Roberge* (2003) 29 Cal.4th 979, 988.) That includes "a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).)

This instructional duty implicates a criminal defendant's fundamental rights. "A defendant is presumed innocent until proven guilty, and the government has the burden to prove guilt, beyond a reasonable doubt, as to each element of each charged offense." (*People v. Booker* (2011) 51 Cal.4th 141, 185, citing § 1096.) Failing to instruct the jury on the essential elements of a charged offense is a "very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee." (*Merritt, supra*, 2 Cal.5th at p. 824, citing U.S.

7

Const., 6th amend.; Cal. Const., art. I, § 16.)  Where claimed instructional error affects the defendant's substantial rights, the challenge is not forfeited by trial counsel's failure to object.  (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927; § 1259.)

B

*Analysis*

Section 591.5 provides, "A person who unlawfully and maliciously removes, injures, destroys, damages, or obstructs the use of any wireless communication device with the intent to prevent the use of the device to summon assistance or notify law enforcement or any public safety agency of a crime is guilty of a misdemeanor."

The prosecution requested the court instruct the jury with CALCRIM No. 2902 for the alleged violation of section 591.5.  The court provided the requested instruction, which stated: "The defendant is charged in Count 4 with removing, damaging, disconnecting, and obstructing a telephone line in violation of Penal Code section 591.  To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant unlawfully removed, damaged, obstructed, and disconnected a telephone line; and [¶] 2. The defendant did so maliciously.  [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else."

During closing arguments, the prosecutor explained count 4 using the elements from CALCRIM No. 2902, and added, "You have that coupled with the 911 call.  You can listen to it.  You heard from the officer this morning [Hefner] admitted to pulling the phone – taking it away and throwing it because she didn't want her to call police.  That's – this is an easy count, and this is a guilty count."  The prosecutor then reiterated the intent as set forth

8

in the instruction as, "Did so maliciously, malicious means when she intentionally does wrongful act or she acts with the wrongful intent to annoy or injure." The prosecutor explained that with respect to Hefner's intent, she admitted grabbing Jody's phone "and throwing it because she didn't want her to call police." Hefner's defense counsel argued only, "You have damaging the phone. That's pretty straightforward. You're just going to have to decide what you believe on that."

As the parties agree, the failure of the court to give a complete instruction for count 4 was error. The instruction that was given failed to instruct the jury that to convict Hefner of violating section 591.5, it was required to find she specifically intended to prevent Jody from summoning law enforcement or assistance. By omitting this element from the instruction, the jury was able to convict Hefner without finding the requisite specific intent beyond a reasonable doubt. (See *Merritt, supra*, 2 Cal.5th at p. 824 ["All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' "].)

Instructional error, as here, that "improperly describes or omits an element of an offense" is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Flood* (1998) 18 Cal.4th 470, 502–503.) In determining whether the omission of a required element is harmless, a reviewing court "must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*Merritt, supra*, 2 Cal.5th at p. 831.) This court " 'asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid*.)

This is the case here. The jury convicted Hefner on count 4, but acquitted Hefner on the similar crime, charged in count 5, of violating section 136.1, subdivision (b). That provision states in pertinent part: "every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge. [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."

The jury instruction provided by the court for count 5, patterned on CALCRIM No. 2622, directed the jurors to convict Hefner if (1) she prevented or discouraged Jody from making a report to law enforcement, (2) Jody was a crime victim, and (3) Hefner knew she was preventing or discouraging Jody from reporting a crime and intended to do so. Given the convictions for assault, there is no question that the jury concluded Jody was a crime victim. With respect to the other elements, Zepeda testified that Hefner told Jody something like, "I was tired. You're going to call [911] for that." Hefner's trial counsel highlighted this testimony when discussing count 5, arguing that Hefner may have been disappointed that Jody called the police, but she had not intimidated Jody or prevented her from calling 911. The jury evidently accepted this argument when it unanimously acquitted Hefner on count 5.

Given the acquittal on count 5, which had the same intent requirement that was erroneously left off the instruction for count 4, we must conclude

"the record contains evidence that could rationally lead" the jury to find Hefner did not intend to prevent Jody from contacting law enforcement or reporting the crimes. Further, the evidence established Jody was on the phone with the 911 dispatcher and that Hefner was aware of this fact at the time she threw Jody's cell phone. Accordingly, we agree with Hefner that the instructional error was prejudicial.

Where the jury has not found a required element for a criminal conviction, the proper remedy is reversal and remand to give the People the option to retry the charge. (See *People v. Mil* (2012) 53 Cal.4th 400, 419–420 [remanding with directions to the trial court for resentencing or retrial on the affected conviction "at the option of the prosecuting attorney"]; and *TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1098 ["Generally, the appropriate remedy for an instructional error that is prejudicial is a reversal of the judgment and a remand for a new trial."].) Accordingly, reversal and remand of count 4 is appropriate.

II

Hefner next contends that probation condition 10—requiring her to "[p]articipate and complete at [her] expense any counseling, rehabilitation/treatment programs deemed appropriate by probation officer; and authorize the release of information relative to progress"—violates the separation of powers doctrine by improperly delegating judicial authority to the probation department. The People respond that Hefner forfeited the issue by failing to object to the condition in the trial court. Alternatively, the People assert the condition is permissible because the trial court properly delegated authority to the probation department with the court's oversight.

A

*Additional Background*

At the sentencing hearing, the trial court stated it had read the probation officer's sentencing recommendation, the victim impact statement, and a letter from the grandmother of Hefner's oldest child. The court also heard statements from Hefner's mother and a friend, and Jody's victim impact statement.

The court then found Hefner eligible for probation. The court asked Hefner if her counsel had reviewed the recommended probation terms with her. Her counsel responded she had not had the opportunity to review the terms with Hefner and asked for time to go over the recommendation with her client. The court then stated it would provide Hefner with a copy of the terms and explained it was imposing a custody commitment period of 300 days, not the 210-day period recommended by the probation department. The court also stated it was amending condition 18, requiring Hefner to enroll in an anger management program, to reflect that Hefner was required to enroll within ten days of her release from custody and complete treatment within

12

seven months.  The court then dismissed count 1 at the prosecution's request, and waived fines and fees based on Hefner's inability to pay.

Finally, the court asked Hefner if she had any questions, and Hefner responded she did not.  The court advised Hefner of her appellate rights and concluded the hearing.  The probation order entered by the court thereafter imposed 18 terms and conditions, including number 10, which Hefner now challenges as an unconstitutional delegation of judicial authority.

B

*Legal Standards*

"[A] vague probation condition may also result in an impermissible delegation of authority to the probation officer.  [Citation.]  Under the separation of powers doctrine (Cal. Const., art. III, § 3), judicial powers may not be delegated to nonjudicial officers.  (*In re S.H.* (2003) 111 Cal.App.4th 310, 318, fn. 11.)  While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer."  (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)

Constitutional claims presenting a pure question of law are not forfeited by trial counsel's failure to object.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*); see *In re R.P.* (2009) 176 Cal.App.4th 562, 566 ["when a facial challenge is made to the constitutionality of a probation condition, there is no need to preserve the claim by an objection"].)  Even where the record supports a finding of forfeiture, appellate courts may exercise their discretion to excuse such forfeiture where the appellant did not have a "meaningful opportunity to object" at sentencing.  (See *People v. Scott* (1994) 9 Cal.4th 331, 352–353, 356.)

13

Whether a term of probation unconstitutionally delegates judicial authority presents a question of law, which this court reviews de novo. (*Smith, supra*, 79 Cal.App.5th at p. 902.)

C

*Analysis*

As an initial matter, the People argue Hefner forfeited her challenge to condition number 10 because she failed to object in the trial court. Hefner responds that she was not provided with a meaningful opportunity to object to the condition at the hearing before its imposition, and that her challenge may be reviewed for the first time on appeal because it is a facial constitutional challenge. We agree with Hefner. Her challenge may be reviewed for the first time here because it does not depend on the underlying factual record. (See *Sheena K., supra*, 40 Cal.4th at pp. 884–886, and *Smith, supra*, 79 Cal.App.5th at p. 901.)

We further agree with Hefner that the condition constitutes an improper delegation of judicial authority. Unlike the specific anger management treatment imposed by the court in condition 18, for example, condition 10 gave the probation officer unfettered discretion to select any type of "counseling, rehabilitation/treatment program." Nothing in the sentencing record informs or constrains the officer's exercise of this broad discretion, leaving it unclear what category of treatment Hefner might be asked to complete. In so doing, condition 10 amounts to an unconstitutional delegation of power. (*Smith, supra*, 79 Cal.App.5th at p. 903.) Accordingly,

14

remand is necessary for the court to either strike or revise the condition.[2] (*Id.* at p. 905; *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1359.)

Finally, we also agree with Hefner that condition 10 is invalid because it imposes of the costs of treatment on her.  A defendant who is granted probation may be ordered to pay the reasonable costs of probation.  (*People v. Hall* (2002) 103 Cal.App.4th 889, 892.)  However, the payment of such costs cannot be made a condition of probation.  (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321.)  An order that a probationer pay collateral costs of probation is enforceable only as a separate money judgment in a civil action. (*Id.* at p. 322; *People v. Hart* (1998) 65 Cal.App.4th 902, 907.)  Accordingly, to the extent that a modified condition 10 is imposed directing Hefner to complete additional specific treatment, the condition may not include the language, "at your expense."

---

[2]      The People argue that this case is like *People v. Penoli* (1996) 46 Cal.App.4th 298, which held that there was no error in the trial court's imposition of a probation condition that required the defendant to enter a residential drug treatment program approved by her probation officer and " 'remain there until she ha[d] successfully completed that program.' " (*Id.* at p. 301.)  *Penoli* rejected the argument that the condition unlawfully delegated judicial authority to the probation officer, reasoning that "any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties." (*Id.* at p. 308.)  *Penoli* noted "[t]he trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*Ibid.*)  The condition at issue in *Penoli*, imposing a drug treatment requirement, is far more specific than condition 10, which provides no direction as to what type of treatment the probation department should require Hefner to complete.  Unlike the condition in *Penoli*, condition 10 improperly "place[s Hefner] completely at the mercy of the probation department." (*Ibid.*)

15

DISPOSITION

Hefner's conviction on count 4 is reversed and the matter is remanded. On remand, the prosecution may elect to retry Hefner on count 4 or request dismissal of the charge. In addition, on remand the trial court is directed to eliminate condition 10 of Hefner's probation or conduct additional proceedings to specify the treatment program imposed and to eliminate the phrase "at your expense." In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.